### OLIVER C. WOODWARD *v.* ALONZO THACHER.

If the owner of an unsound horse sell the horse, warranting him to be sound, the buyer may sell the horse for the best price he can obtain, without first offering to return him to the vendor; and if the buyer act with common prudence and discretion in disposing of the horse, the rule of damages, in an action for deceit brought by him against the vendor, will be the difference between the price which he obtained for the horse and what the horse would have been worth, if he had been sound, as he was warranted to be.

Woodward *v.* Thacher.

Trespass on the Case for a false warranty, or deceit, in the exchange of a horse. Plea, the general issue, and trial by jury, November Term, 1846,—Kellogg, J., presiding.

On trial the plaintiff gave evidence tending to prove, that he exchanged horses with the defendant on the 17th of December, 1845, and that, in the contract of exchange, the defendant warranted the horse, by him transferred to the plaintiff, as being then sound; that the horse was then in fact unsound and diseased, and continued so during all the time the plaintiff owned him; that while the plaintiff owned him, the horse, though well treated and fed, remained poor, and did not improve, and continued so diseased, that most persons, who examined him, considered him as of no value; that the plaintiff, regarding the horse as having an incurable disease, on the 20th day of February, 1846, sold him for ten dollars, which was the most he could obtain; and that the horse, if sound, would have been well worth one hundred dollars.

The defendant gave evidence tending to prove, that he did not warrant the horse, but only represented, that the horse had been affected with the horse distemper the previous spring, the effects of which were still upon him, and also gave evidence tending to prove, that whatever ailed the horse was but the effect of that disease. The testimony also tended to prove, that the horse, after he was sold by the plaintiff, had ultimately recovered, so that he had been recently sold for more than one hundred dollars, and that, at the time of the present trial, he was apparently sound and well.

The defendant requested the court to charge the jury, on the subject of damages, that, if the plaintiff was entitled to recover, it was so much, as the disease, which was upon the horse, lessened the actual value of the horse, or only so much, as that would have lessened his value to the plaintiff, if the plaintiff had kept and treated the horse, as he had since been kept and treated.

But the court instructed the jury, upon this point, that, if they found the warranty proved, as alleged by the plaintiff, and that the horse was then unsound, the plaintiff was entitled to recover such amount of damages, as he suffered from that unsoundness, that is, the difference between what he obtained for the horse and what he would in fact have been worth to him, if he had been sound, as warranted, if the plaintiff, in the keeping, treatment and disposing

of the horse, exercised ordinary care, diligence, prudence and discrétion ; and that, if they should find, that the horse, since he was sold by the plaintiff, has, by the treatment he has received, entirely recovered, yet if that recovery were contrary to the reasonable expectations entertained in relation to the horse, when owned by the plaintiff, it should not diminish the plaintiff's claim for damages.

Verdict for plaintiff.    Exceptions by defendant.

*Washburn & Marsh* and *Tracy & Converse* for defendant.

The defendant insists, that his liability is to be determined by the actual condition of the horse at the time of the sale ; and that this liability cannot be enhanced by any subsequent conduct of the plaintiff in the management or disposal of the horse. Any other rule would allow the plaintiff to kill the horse, and then make his own judgment, instead of the condition of the horse, the standard for determining the defendant's liability. ·

But at least the plaintiff should have offered to return the horse to the defendant, and have thus given him an opportunity to rescind the bargain ; and without doing so, the defendant insists, that he cannot be made liable for the enhanced damages.    Selw. N. P., Tit. Deceit.    *Chesterman* v. *Lamb*, 2 Ad. & E. 129, [29 E. C. L. 50.] *Buchanan* v. *Parnshaw*, 2 T. R. 745.    *Clare* v. *Maynard*, 32 E. C. L. 713.    *McKenzie* v. *Hancock*, R. & M. 436, [21 E. C. L. 484.]

*C. Coolidge* for plaintiff.

The legal rule of damages is, that the party is to be put in as good condition, as he would have been in, had the contract been performed.    *Ferris* v. *Barlow*, 2 Aik. 106.    *Cary* v. *Gruman*, 4 Hill 625.    *Voorhees* v. *Earl*, 2 Ib. 288.    Inasmuch as no other evidence of the market value of the diseased horse was given, than what was furnished by the highest price the plaintiff could obtain for him,—and he was not bound to keep the animal,—the court correctly put the rule, as between what the horse was sold for and what he would have been worth, if sound.    As to the first part of the defendant's request, the court gave instructions substantially conforming to it ; and the latter part of the request demanded the conditions, that the plaintiff was bound to keep the animal, until he

should die, or be restored to soundness, and meanwhile treat him curatively, just as others have done,—the one condition unreasonable, the other impracticable.

The opinion of the court was delivered by

HALL, J. We think, the charge of the county court was entirely correct. The defendant had warranted the horse sound, when he was unsound. He had violated his contract. The plaintiff found a different horse on his hands from the one he had contracted for,—a sick horse, which he cannot be supposed to have wanted. It would be unreasonable, that he should be obliged to incur the trouble and risk of keeping him for a long period, in order, by experiments in medical or other treatment, to ascertain if he could not be made more valuable to him. It is but just, that he should be at liberty to get the horse off his hands in the best manner he could ; and if, in disposing of him, he acted with common prudence and discretion, we can see no reason, why the price obtained for him should not be deemed the proper measure of his value. The difference between the price obtained and what the horse ought to be worth by the warranty would be the actual loss, which the plaintiff would sustain by the defendant's breach of contract ; and it is right, that the plaintiff should be allowed to recover it.

It is insisted in behalf of the defendant, that, by the English authorities, the price for which an unsound horse is sold by the purchaser cannot be taken as the measure of his value, in estimating damages, unless the purchaser have previously offered to return him to the seller. But the authorities cited do not support this position. They merely show, that when the plaintiff seeks to go beyond the difference in value between the horse as sound and unsound, and, over and above that difference, claims to recover special damages for the keeping of the horse until he could sell him, he must show, that he had previously offered to return him. None of the cases go farther. In *Caswell* v. *Coare*, 1 Taunt. 566, the reason given by Ch. J. MANSFIELD for the rule, that the plaintiff must offer to return the horse, before he can claim damages for the keeping, is, that it is not the defendant's fault, that the plaintiff keeps him. For he adds, " when the warranty was broken, the plaintiff might

*instantly* have sold the horse for what he could get, and might have recovered the residue of the price in damages." It is only, then, where the purchaser desires to charge the seller with the expense of keeping the horse, until he can have an opportunity of selling him, that any offer to return him is necessary.

It distinctly appearing from the bill of exceptions, that the jury, under the charge, could have found no other damages than the difference between the horse as warranted and what he was actually worth to the plaintiff, we are satisfied the verdict was right. The judgment of the county court is therefore affirmed.