# GEORGE H. COX
## v.
# WILLIAM A. GERKIN.

*Sales—Fraudulent Misrepresentations—Measure of Damages—Evidence—Objection to—When Must be Specific—Practice—Delivering Declaration to Jury.*

1. In an action by a vendee against his vendor for fraudulent misrepresentations as to the subject of the contract, the true measure of damages is the difference between what the buyer got and what he was entitled to get. The fact that a part, or all, of the purchase price may have been paid in notes does not affect the rule, and the unpaid balance due on such notes can not be recouped in the action for deceit.

2. The value of the property, having been fixed by the agreement of the parties for the purpose of the purchase, was not a proper subject for evidence upon the trial in the case presented.

3. An objection to evidence, which is incompetent only for want of preliminary proof, must be specifically made when such evidence is offered; a general objection then made raises only the question of relevancy, and the specific objection can not be first made when it is too late to introduce the preliminary proof.

4. Upon the evidence presented, the jury were authorized in finding that the defendant had been guilty of fraudulent misrepresentations in making the sale in question.

[Opinion filed December 20, 1890.]

APPEAL from the Circuit Court of McLean County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. WILLIAMS & CAPEN, JAMES S. EWING, JOHN T. LILLARD and ROBERT B. PORTER, for appellant.

Messrs. THOMAS F. TIPTON and A. E. DEMANGE, for appellee.

PLEASANTS, J. Appellee purchased of appellant a half interest in a certain mill property in Bloomington, then known as the Crown Roller Mill, for $20,500, with the understanding that one William H. Wentz, who had long been and then

was employed therein, was to become his partner in its operation, he purchasing the other half interest for $8,000 in cash, and his notes for $12,500 secured by mortgage thereon. A deed for the property was delivered to them in February, 1887, and they ran it apparently as partners for about ten months. The result as to profits was not what appellee had expected. He and Wentz did not agree. A corporation was then formed with a nominal capital of $75,000, reckoning the property at $50,000, which carried on the business until the spring of 1889, when it failed and went into the hands of a receiver. An examination of the books then made by an expert led to the arrest of Wentz, who had attended to the collections and office business, for embezzlement. To induce the dismissal of this proceeding he, among other things, made a sworn statement in regard to the sale by appellant to appellee, in view of which it was in fact dismissed, and this suit brought for fraud and deceit in said sale, which resulted in a verdict and judgment for appellee for $5,500 damages.

The declaration contained twelve counts, varying somewhat as to the alleged misrepresentations. Eight of them were held bad on demurrer, and the trial was had upon the plea of the general issue interposed to the other four. The misrepresentations charged in these were that the property had cost the defendant $41,000, was worth $42,000, and would earn from $12,000 to $15,000 a year. Ordinarily the parties to such transactions deal with each other at arm's length. The buyer examines the property for himself and relies upon his own judgment thereon, or seeks advice from those he supposes to be disinterested and competent to give it. Understanding the seller's motive for commending it, he is not materially influenced by the expressions of his opinion of its value or earning capacity, or even his positive statements as to its cost. And hence, except under special circumstances, such expressions and statements, though false and made with intent to deceive, are not deemed fraudulent or actionable. Hawk v. Brownell, 120 Ill. 161; Dillman v. Nadlehoffer, 119 Ill. 575; Plummer v. Rigdon, 78 Ill. 227; Tuck v. Downing, 76 Ill. 71; Noetling v. Wright, 72 Ill. 390; Banta v. Palmer, 47 Ill. 100.

But the same authorities, with many others, hold that they may be made so by such circumstances; as, where the parties are not on equal terms as to means of knowing or ascertaining their truth or falsity by personal examination, or the seller wrongfully contrives to prevent the buyer from using them and exercising his own judgment as he otherwise would, or where they stand in such relations of confidence as justify him in relying upon them. In this case the buyer had resided for years in the city of Bloomington and neighborhood of the property. He had carried on the business of a baker, and in such business used the flour made at the mill in question. Shortly before his purchase he went through it twice, and so far as appears might have examined it as fully as he pleased. Yet the declaration avers, in substance, that he had no experience as a miller, nor any such knowledge as would have enabled him from personal examination to judge of its value as a mill; that, knowing this, the defendant not only made the misrepresentations charged with knowledge that they were false and with intent to deceive and defraud the plaintiff, but also with the same intent referred him to Wentz, as a disinterested party who knew the facts from 'his long connection with the business and books of the mill, for information in regard to them; that he had previously conspired with said Wentz to have him falsely make the same representations and, to satisfy plaintiff of his sincerity and confidence in making them, to further falsely pretend that he desired to purchase the other half interest at the same price and share with plaintiff in the chance of profit or loss in the business, and that he had $8,000 in cash to pay on account of it and could get time, on the security of said interest, for the payment of the balance; that in pursuance of said conspiracy Wentz did so falsely represent and pretend to plaintiff; that plaintiff relied on the representations so confirmed and was thereby induced to make the purchase as he did; that in truth and fact said Wentz was then wholly insolvent; that, though he delivered to defendant in presence of plaintiff, the sum of $8,000 apparently in part payment for a half interest in the mill, it was really the money of the defendant, furnished by him to

Wentz for the special purpose of such delivery, and of thereby deceiving plaintiff and consummating the fraud upon him; and that said ·Wentz did not in good faith purchase any interest in said mill or become the partner of plaintiff in its operation, but throughout the negotiations for the sale to plaintiff and the ostensible partnership, acted at the instance, in the interest and under pay of the defendant.

According to these averments the parties were not on equal terms. The seller had knowledge, both general and special, from which he could form an opinion, at least approximately correct, of the value and earning capacity of the mill, and the buyer had not. To take advantage of his ignorance and prevent him from seeking information and advice from disinterested sources, the seller devised, and put in successful operation a somewhat novel scheme, well adapted to the purpose. He brought about relations of confidence between his own agent and the buyer, and had apparently important but really fictitious transactions with said agent, intended and calculated to give a false credit to his representations. If this scheme was proved the jury owed no apology to anybody for finding it fraudulent, and that in being deceived by it the plaintiff showed no lack of common prudence.

Wentz testified to it positively, and the defendant denied all his statements respecting it except as to the furnishing the $8,000 for the pretended cash payment, which he admitted and attempted to explain—whether satisfactorily or not was for the jury to determine. If they believed Wentz, and also, from the evidence, that the representations complained of were by the defendant known to be false, and that plaintiff was thereby damaged to the amount found, their finding should be sustained unless there was material error in some ruling of the court.

Appellant insists there was. First, as to the rule of damages applied. It appeared that for the interest purchased by appellee he conveyed to appellant certain real property in Bloomington, at an agreed valuation of $16,000, and gave his notes, secured by mortgage, for $4,500; and that of these notes he had paid only one, for $1,000, and was seeking, by a proceed-

ing in chancery, still pending in the same court, to have the
others and the mortgage canceled, because of the alleged
fraud here in question.   In answer to a special interrogatory
the jury found the entire property to be worth only $30,000—
or $11,000 less than it ought to have been according to the
representations—and gave to plaintiff for his damages one
half the amount of the shortage.   Appellant claims that
since appellee had paid only $17,000, and had received $15,000
in the value of the property as found, $2,000 would have
compensated him in full, and was, therefore, all he should have
been allowed.   In this view of the rule of damages applicable
here, an instruction was asked to the effect that the amount
of the notes in litigation should not be regarded as any part
of what appellee had paid for his half interest, but should be
deducted from the price agreed on therefor, which the court
refused.   In this refusal we see no error.   The instruction as
asked did not state the measure of damages nor the rule for its
ascertainment, in terms, and its implication and practical effect
might not have been understood by the jury.   The true
measure of appellee's damages, as we understand it, was not
the difference between what he actually paid, or even agreed
to pay, and the value of what he got, but the difference in
value between what he got and what he was entitled to get
that is, what it was represented to be.   Drew v. Beall, 12
Ill. 167, and cases there cited.   If he was entitled to get
property of the value of $20,500, he became so by virtue of
and immediately upon the execution of his deed and delivery
of his notes to appellant, because he had then done all he had
agreed or was bound to do in order thereto.   Whether that
was much or little is immaterial.   It would have been the
same if he had paid nothing, but only given his notes for the
entire price.   Appellant's liability in this action, if any, was
then incurred and fixed in full.   It did not depend upon the
payment of the notes, nor would it be affected by any subse-
quent default in the payment thereof.   That would be a dis-
tinct wrong—not a part of nor arising in the same transaction,
and, therefore, not a ground for recoupment against the dam-
ages here sought.   That transaction was completed by the

Cox v. Gerkin.

delivery and not by the payment of the notes.    For default
in their payment appellant would have his remedy, but not
by means of the instruction asked.    Appellee is not here seek-
ing to rescind the contract, which should restore the *status
quo*, but is affirming it, and attempting to get the full benefit
of it.    This judgment would, therefore, conclusively bar the
relief he sought by the chancery proceeding mentioned,
and all defense, at law or in equity, to the claim on the unpaid
notes founded on the fraud here alleged, because it gives him
all the damages he had sustained by reason of that fraud, and
his right to them rests upon his liability on those notes; more-
over, although not technical payment, they were received as
of the value they represent, and would be presumed to be so.
But, for the reasons stated, we think the amount paid was im-
material, and therefore the instruction was properly refused.
The value of the property conveyed to appellee having been
fixed by agreement of the parties for the purpose of their
purchase, was not a proper subject of inquiry, and the evi-
dence relating to it was rightly withdrawn from the considera-
tion of the jury.    Drew v. Beall, *supra*.

Appellant further insists that the verdict should have been
set aside on his motion, as being against the clear weight of
the evidence—that all the representations complained of were
thereby shown to be true.    In that case no others, however
false and deceptive, made to induce the belief of and reliance
upon those complained of, would support this action.    This
was a question for the jury, and without recapitulation here,
we think there was such a conflict as required its submission
for their determination as to the preponderance.

Perhaps the most material evidence on the part of appel-
lee, upon this question, was the deposition of John N. Roe,
taken in the chancery proceedings referred to between these
parties, on this precise question, and showing a full cross-
examination on behalf of this appellant.    Its admission over
his objection was excepted to and is now urged as error, on the
ground that whatever may be the practice in chancery, in an
action at law the deposition of a capable and producible wit-
ness taken in another case, though between the same parties

on the same subject-matter and with full opportunity for cross-examination, is absolutely and incurably incompetent; that in such an action such a deposition can not properly be admitted without preliminary proof showing that the deponent has since died, or is insane or otherwise incapable, or that he could not by reasonable diligence be produced. No such proof was here offered, and it is conceded that Roe was still living, and the deposition itself shows that when taken the place of his residence was St. Louis, Mo. Assuming for all present purposes that the law is as thus stated, a long series of decisions has made it a familiar rule of practice in this State, that an objection to evidence which is incompetent only for want of preliminary proof must be specifically made when the proffered evidence is offered; that a general objection then made is insufficient except for irrelevancy; and that neither a general nor a specific objection, when first made afterward and too late for the introduction of the preliminary proof, will be regarded. The reason is, that the specific objection, being not insuperable at law and presumably not so in fact, is deemed to be waived unless made in time to afford the fullest opportunity to meet it. Schroeder v. Walsh, 10 Ill. App. 39; Conway v. Case, 22 Ill. 139; Buntain v. Bailey, 27 Ill. 409.

We copy from the transcript as follows:

" The deposition of John M. Roe offered in evidence by the plaintiff.

" Objected to.

" The court: That was taken in the chancery case where the record shows these parties were in the case and the subject-matter the same. It may be read. (Exception taken.)

" Mr. Ewing: We object for the reason there is nothing in the declaration as to the quality or value of this mill.

" Objection overruled, and defendant then and there excepted.

" Mr. Ewing: I object to the evidence with reference to the system of the mill, and with reference to the quality and condition of the machinery, and for the reason that there is nothing in the declaration by which they claim any representation (as) to either of these things, or (to) recover any damages by reason of the failure of the machinery.

"Objection overruled, and the defendant then and there excepted.

"The Court: I thought I explained why I admitted that evidence. It is not with the view of meeting any questions of misrepresentation as to the quality or system, and as I said, you can limit it with instructions to the jury."

The deposition was then read. It thus appears that the objection as first made, was general only. Being overruled, the special ground of irrelevancy as to portions of it was stated, which the general objection reached. But that it was secondary in character, or incompetent for want of preliminary proof, was not suggested. Its relevancy to the question of the value of the property is not now denied; on the contrary, its materiality upon that question is expressly asserted, and hence it is urged that its admission was error, for which the judgment should be reversed. We see no sufficient reason against the application in this case of the rule referred to. Whether the non-residence of the witness would be a sufficient answer to the specific objection, or whether, under our statute providing for the taking of depositions, appellee was bound to produce him for oral examination or to take his deposition for this case and this trial thereof, if by reasonable diligence he could, we deem it unnecessary to decide; for here, as in other like cases, it must be presumed that the court did not know what proof he would or could make as to diligence and the possibility of procuring Roe's personal attendance or taking his deposition specially for this case and trial. He was entitled to the opportunity, by means of the specific objection, to make what proof he could to meet it, and not having had it the general objection should not be entertained.

It is further complained that the jury were permitted to take with them the declaration, containing eight counts held bad on demurrer, which charged other representations than those in issue, and under instructions relating generally to representations "as charged in the declaration," may have misled them. We disapprove of such a practice in a case like this, but indulge the presumption here, that when it went to the jury the particular representations in question had come

to be fully understood by them. Their answer to the special interrogatory in connection with the damages awarded, shows a finding which warrants this presumption. They must have found that the property was represented to be of the value of $41,000 and was in fact of the value of only $30,000, and these findings were upon the issues made.

On the whole case we see no sufficient reason for reversing this judgment and it will therefore be affirmed.

*Judgment affirmed.*