FARGO GAS & COKE CO. *vs.* FARGO GAS & ELECTRIC CO.

Opinion filed July 23, 1894.

**Sale—False Representations—Duty of Purchaser to Investigate.**

> Ordinarily, one who buys property has a right implicity to rely upon representations of the seller; and, if they were false and made with intent to deceive the purchaser, the seller will not be allowed to urge that the buyer, by investigation, could have discovered their falsity.

**Deceit—Measure of Damages.**

> In an action to recover the unpaid portion of the purchase price of a gas and electric light plant sold by plaintiff to defendant, defendant set up, as a counterclaim, damages sustained by it because of the deceit of plaintiff in making the sale. The alleged false representations related to the physical condition of the plant, its wires, poles, gas mains, and fixtures, and also the amount of its earnings the year previous to the sale, and the prices charged customers for gas and electric light. *Held,* that defendant was under no obligation to investigate the truth of such representations, and that, therefore, it was error for the court to charge the jury that, if the means were at defendants hands to discover the truth or untruth of plaintiff's statements with respect to these matters, defendant must be presumed to have had knowledge of the actual facts, the only means at defendant's hands to discover the truth or falsity of the statements made being an investigation of such matters. *Held,* further, that, in actions for damages because of deceit in the sale of property, the measure of damages is the difference between what the property would have been worth if as represented and what it actually was worth at the time of sale.

Appeal from District Court, Cass County; *McConnell,* J.

Action by the Fargo Gas & Coke Company against the Fargo Gas & Electric Company to recover a balance due on the purchase price of a gas and electric plant sold by plaintiff to defendant. From a judgment for plaintiff, defendant appeals.

Reversed.

*W. C. Resser,* (*Seth Newman,* of counsel,) for appellant.

Every contracting party has an absolute right to rely upon the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as a basis of a mutual engagement and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract with full means of knowledge, has deliberately pledge

his faith.   *Meads* v. *Bunn*, 32 N. Y. 280; 1 Bigelow on Fraud, 30, 523, 524; *McClellan* v. *Scott*, 24 Wis. 81; *Schwenek* v. *Naylor*, 102 N. Y. 683; *Bank* v. *Burdick*, 87 N. Y. 40; *Schumaker* v. *Mather*, 133 N. Y. 590; *Fairchild* v. *McMahon*, 139 N. Y. 290; *Redding* v. *Wright*, 49 Minn. 322, 51 N. W. Rep. 1056; *Maxfield* v. *Schwartz*, 45 Minn. 150, 47 N. W. Rep. 448; *Aultman* v. *Olson*, 34 Minn. 450, 26 N. W. Rep. 451; *Linnehan* v. *Strong*, 107 Ill. 303; *Gardner* v. *Trenary*, 65 Ia. 646, 22 N. W. Rep. 912; *Webber* v. *Webber*, 47 Mich. 569, 11 N. W. Rep. 389; *David* v. *Park*, 103 Mass. 501; *Mallory* v. *Tod*, 19 Ind. 130; *Keller* v. *Insurance Co.*, 28 Ind. 170; *Jones* v. *Hathaway*, 77 Ind. 14; *Dodge* v. *Pope*, 93 Ind. 480; *West* v. *Wright*, 98 Ind. 335; *Upshaw* v. *DeBow*, 7 Bush. (Ky.) 442; *Griffiths* v. *Hawks*, 46 Tex. 217; *Redgrave* v. *Hurd*, 20 Ch. Div. 13; *Bonurant* v. *Crawford,* 22 Ia. 40; *Hale* v. *Philbrick*, 42 Ia. 481; *Caldwell* v. *Henry*, 76 Mo. 254; *McKee* v. *Eaton*, 26 Kan. 227; *Oswald* v. *McGeehee*, 28 Miss. 340.

*Chas. A. Pollock*, for respondent.

An incorrect ruling on the measure of damages cannot be assigned for error, when there has been a verdict in favor of the defendant on the merits.   2 Thompson on Trials, 1751; *Marely* v. *Shultz*, 29 N. Y. 346.

The decision in *Meads* v. *Bunn* is no authority for the position that mere falsity without fraud avoids a contract.   The whole decision was predicated upon a series of facts not merely untrue but fraudulently so.   *Marsh* v. *Faulker*, 40 N. Y. 562; *Long* v. *Warren*, 68 N. Y. 426; *Slaughter Adm'r* v. *Gerson*, 13 Wall. 383; *Poland.* v. *Brownell*, 131 Mass. 138; *Dugan* v. *Cureton*, 31 Am. Dec. 727; *Foley* v. *Cowgill*, 32 Am. Dec. 49; *Moore* v. *Tuberville*, 5 Am. Dec. 642; 5 Lawson R. and R. 2355.

CORLISS, J.   The plaintiff has recovered judgment for the balance of the purchase price of a gas and electric plant located in the City of Fargo, N. D., sold by plaintiff to the defendant. A portion of the consideration was paid, and, upon being sued for the unpaid portion of the purchase price, defendant set up as a

defense a partial failure of consideration from the nondelivery of some of the property purchased, and also a counterclaim for damages arising out of the alleged deceit of the plaintiff in making the sale. The view we take of the case renders a more particular reference to the defense of partial failure of consideration unnecessary. We will confine ourselves to the single question of fraud. The property purchased consisted of a gas plant, with mains and all the other classes of property which go to make up such a plant, and also an arc electric light plant, with poles, wires, and other fixtures distributed over different parts of the City of Fargo. These two plants were used by the plaintiff at the time of making the sale thereof to defendant, to light the public streets of the City of Fargo, its public buildings, stores, hotels, and dwelling houses, and had been so used for some time prior to such sale. The alleged fraudulent representations were of two classes,—one class relating to the physical condition of the plant, embracing statements as to the number of miles of wire, the number of poles, the gas mains, and as to the condition of the plant in other respects; and the other class related to the net earnings of the plant for the previous year, and the prices charged customers for gas and electric light. It appears that defendant relied chiefly upon the earning capacity of the plant in making the purchase, and was induced to believe that its net annual earnings would equal 10 per cent. of the purchase price ($85,300,) because of the statements of the plaintiff's officers that its net earings during the past year had been $8,913. There was evidence tending to show that this statement was false, and that it must have been known to be false by plaintiff's officers who negotiated the sale. Having in this brief manner set forth the general character of the property sold, and the general nature of the fraudulent representations upon which defendant's counterclaim for deceit was founded, we can now intelligently turn to what we regard as a fatal error in the case.

In the course of his charge to the jury, the learned trial judge instructed them as follows: "If the means were at the defendant's hands to discover the truth or untruth of the plaintiff's

statements with regard to the amount and character of the property, defendant must be presumed to have had a knowledge of the actual facts." This instruction must be considered in the light of the refusal of the court to charge the jury as follows, at the request of defendant's counsel: "If you find that, during the negotiations, statements were made by the plaintiff as to the earnings of the plant, the defendant had a right to rely upon these statements; and if they were so relied on, and were false, and the defendant suffered injury thereby, the defendant would be entitled to recover the damages which it suffered in consequence thereof." It is apparent from this refusal to charge, and from the charge as cited given, that the court told the jury that, as a matter of law, defendant did not have the right implicitly to rely upon the representations of the plaintiff touching the character of the plant, but must make inquiries concerning them, and must make investigation as to their truth or falsity. It is true that the word "investigate" is not used; but, when we consider the nature of the property and the character of the representations made, it is obvious that something more that a mere inspection of an object present before a purchaser was necessary in order to enable the purchaser in this case to "discover" the truth or falsity of plaintiff's statements. Such an instruction to a jury might be appropriate in an action in which fraud in the sale of a horse was set up, the seller having represented the horse to be perfectly sound, and it appearing that the horse stood before the purchaser at the time the representation was made, and that the only defect consisted in the absence of a leg, easily discernible by the ordinary use of eyesight. But in the case at bar the means of discovering the truth or untruth of these false statements were not at hand in the sense that they must have been employed before the seller could be held responsible for his fraudulent representations; and, when this language was used, the jury must have drawn the inference from the fact that this plant was in the same city, and could be investigated with respect to its condition and its earnings, and the prices charged customers for gas and electric light, and with

reference to the other features embraced in the statements made by plaintiff on the sale, that therefore the means were at hand, within the rule laid down by the court requiring the purchaser to discover at its peril the truth or falsity of the statements made. Such a rule of law would be unjust and intolerable. When parties deal at arm's length, the doctrine of *caveat emptor* applies; but the moment the vendor makes a false statement of fact, and its falsity is not palpable to the purchaser, he has an undoubted right implicitly to rely upon it. That would, indeed, be a strange rule of law which, when the seller had successfully entrapped his victim by false statements, and was called to account in a court of justice for his deceit, would permit him to escape by urging the folly of his dupe for not suspecting that he the seller, was a knave. In the absence of such a suspicion, it is entirely reasonable for one to put faith in the deliberate representations of another. The jury must have understood that the means were at hand to discover the claim, because the defendant might have measured the wire, counted the poles, examined the gas mains, ascertained how much customers were paying for gas and electric light, and might have hired an expert to examine into the earnings and expenses of the plaintiff in running the plant, with a view to discovering whether a business man had told the truth. It should not have been left to the jury to determine whether the means were at hand to discover the falsity of the statements made, in view of the character of such statements and the nature of the property sold. The defendant as a matter of law, had a right to rely implicitly upon the statements made by plaintiff touching the character of this plant. So long as defendant did not actually know the representations to be false, it was under no obligation to investigate to determine their truth or falsity. In *Mead* v. *Bunn*, 32 N. Y. 280, the court say: "Every contracting party has an absolute right to rely on the express statements of an existing fact, the truth of which is known to the opposite party and unknown to him, as a basis of mutual engagement, and he is under no obligation to investigate and verify statements, to

the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith." In *Redding* v. *Wright*, (Minn.) 51 N. W. 1056 (a case very much in point,) the court say: "If the representations were fraudulently made with the intent to induce the plaintiff to rely upon the fact being as represented, and to act upon the belief thus induced, the wrongdoer who succeeds in such a purpose is not to be shielded from responsibility by the plea that the defrauded party would have discovered the falsity of the representation if he had pursued such means of information as were available to him." While the rule has been in some cases stated in terms more favorable to plaintiff, yet no decision can be found which establishes a doctrine under which defendant would be bound, under the circumstances of this case, to make any investigation or inquiry touching the truth or falsity of the statements made in connection with the sale. There are many well considered cases which sustain our view that defendant had a right implicity to rely upon the representations made by plaintiff with respect to the character of the property to be purchased by defendant. In addition to the cases already cited, we refer to *Maxfield* v. *Schwartz*, 45 Minn. 150, 47 N. W. 448; *Gardner* v. *Trenary*, 65 Iowa, 646, 22 N. W. 912; *Schumaker* v. *Mather*, 133 N. Y. 590, 30 N. E. 755; *McClellan* v. *Scott*, 24 Wis. 81; *Caldwell* v. *Henry*, 76 Mo. 254; *Oswald* v. *McGehee*, 28 Miss. 340; *Cottrill* v. *Krum*, 100 Mo. 397, 13 S. W. 753; *Campbell* v. *Frankern*, 65 Ind. 591; Kerr, Fraud & M. 77, 80, 81; *Erickson* v. *Fisher*, (Minn.) 53 N. W. 638; *Alfred Shrimpton & Sons* v. *Philbrik*, (Minn.) 55 N. W. 551; *Barndt* v. *Frederick*, (Wis.) 47 N. W. 6; Bigelow, Fraud, 522, 528. We are aware that cases can be found which exact from the buyer more care in ascertaining the truth or falsity of representations than the decisions just cited. These cases appear to us to have been rightfully decided, in view of the facts. In determining what the courts in such cases intended to hold, the language of each opinion must be read, in the light of the facts of the particular case. The unmistakable drift is towards the just doctrine that the

wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim. The falsity of the statement may be apparent because the thing misrepresented is before the buyer, and the most casual look will suffice to discover the falsehood, no artifice being used to divert his attention; or the statement may carry its own refutation upon its face,—may be so absurd or monstrous that is palpably false, as a statement by a person carrying on a business known to the purchaser to be very small that the receipts of the business are a million dollars a year. In these and other similar cases the law will not allow a person to assert that he was deceived. But the general rule is, and, upon principal, must be, that the question is one of reliance by the buyer upon the false statement of the seller. Whether it was wise for him to rely upon it, whether he was prudent in so doing, whether he is not chargeable with negligence in a certain sense in not investigating,—these inquiries are, in general, immaterial, provided the purchaser has in fact been deceived. The circumstances under which fraud is accomplished are so varied, the nature of the property and the character of the misrepresentations are so widely different, in different cases, that it is unwise to attempt to enunciate with precision a general rule by which all cases shall be governed. It is better to decide the cases as they arise, keeping in view the general principle that courts will not readily listen to the plea that the defrauded party was too easily deceived. For this error in the charge, the judgment will be reversed, and a new trial granted.

We wish, however, before finally disposing of this case, to settle the rule of damages. The trial judge seems to have given the jury two different rules touching the measure of damages. While we are not prepared to say that we would reverse the case on this point alone, in view of the fact that defendant's counsel appears to have requested the court to charge the jury that what we regard as the improper rule was in fact the correct one, yet, to avoid a reversal on this ground in the future, we will now

decide what is the proper measure of damages in a case of this kind. The purchase price of the plant was $85,300. The court several times charged the jury that the measure of damages was the difference between this agreed price,—*i. e.* $85,300,—and what the plant was really worth at the time of the sale. In other parts of the charge the court told the jury that the damages that defendant was entitled to recover were the difference between what the plant would have been worth if as represented and what it actually was worth at the time of sale. It is obvious that these two rules cannot be reconciled. One gives to the party deceived the full benefit of his bargain. The other does not. We are clear that the best reason is with the doctrine that, where one is deceived and defrauded, he can recover as damages the difference between the value of what he would have obtained had the statement been true and the value of what he actually received. This represents his actual loss by reason of the fraud of the seller, on the theory that he does not rescind the contract. Of course, if he sees fit to rescind for fraud, he can only recover back what he has paid. But if he desires to stand by the agreement, as he has a perfect right to do, he can logically say to the wrongdoer: "If you had told me the truth, the property would have been worth so much. It is not worth so much, because it is not as you represented it. I demand that you make good the difference in money." While the decisions are at variance on this proposition, a host of cases can be cited to support the rule we establish in this state. *Page* v. *Wells,* 37 Mich. 415; *Williams* v. *McFadden,* 23 Fla. 143, 1 So. 618; *Nysewander* v. *Lowman,* 124 Ind. 584, 24 N. E. 355; *Noyes* v. *Blodgett,* 58 N. H. 502; *Stiles* v. *White,* 11 Metc. (Mass.) 356; *Lunn* v. *Shermer,* 93 N. C. 164; *Vail* v. *Reynolds,* 118 N. Y. 297, 23 N. E. 301; *Morse* v. *Hutchins,* 102 Mass. 439; *Doran* v. *Eaton,* (Minn.) 41 N. W. 244; *Woolman* v. *Wirtsbaugh,* (Neb.) 35 N. W. 216; *Drew* v. *Beall,* 62 Ill. 167; *Cox* v. *Gerkin,* 38 Ill. App. 340, 344; *Wynn* v. *Longley* 31 Ill. App. 616; *Krumm* v. *Beach,* 96 N. Y. 398, 400; *Whitney* v. *Allaire,* 1 N. Y. 305; *Horne* v. *Walton,* (Ill. Sup.) 7 N. E. 100; *Jackson* v. *Armstrong,* (Mich.) 14 N. W. 702; *Matlock* v.

*Reppy*, (Ark.) 14 S. W. 546; *Reggio* v. *Braggiotti*, 7 Cush. 166; *Woodward* v. *Thacher*, 21 Vt. 580; *Page* v. *Parker*, 43 N. H. 363; 3 Suth. Dam. pp. 389, 390, 392. Other decisions limit the recovery to the difference between the purchase price and the actual value of the property at the time of sale. See *Crater* v. *Binninger*, 33 N. J. Law, 513; *Atwater* v. *Whiteman*, 41 Fed. 427; *Glaspell* v. *Railroad Co.*, 43 Fed. 900; *High* v. *Berret*, (Pa. Sup.) 23 Atl. 1004; *Smith* v. *Bolles*, 132 U. S. 125, 130, 10 Sup. Ct. 39; *Reynolds* v. *Franklin*, (Minn.) 46 N. W. 139; *Redding* v. *Godwin*, Id. 563; *Alden* v. *Wright*, (Minn.) 49 N. W. 767; *Stickney* v. *Jourdan*, Id. 980. This doctrine places the wrongdoer in a better position than one who in good faith warrants the quality of property, and afterwards discovers that he was mistaken. One who is liable for breach of warranty is under the general rule bound to pay the difference between what the property would have been worth if as warranted and its actual value at the time of the sale. This is the rule in this state. Comp. Laws, § 4593. Certainly, one who willfully misrepresents the condition of the thing sold cannot justly lay claim to a rule of damages which will afford him more protection than one who is merely guilty of breach of contract. Mr. Justice Gray in *Moore* v. *Hutchins*, 102 Mass. 440, has strongly stated the ground upon which stands the rule we adopt. He says: "To allow the plaintiff only the difference between the real value of the property and the price which he was induced to pay for it would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the wrongdoer, and, in proportion that the original price was low, would afford a protection to the party who had broken, at the expense of the party who was willing to abide by the terms of the contract." The judgment of the District Court is reversed, and a new trial ordered. All concur.