## J. F. Hinton, et al. v. A. Ring.

1. FRAUD—*when failure to disclose facts constitutes.* Where one occupies to another the position of a joint purchaser, it becomes the duty of such person, fully and honestly, to disclose the true purchase price of the property to be jointly purchased; failure to do so, gives to such other a cause of action for deceit, where such other has been misled.

2. FRAUD—*what does not purge transaction of.* The mere fact that the person defrauded in the purchase of property by being deceived as to the true purchase price which he was required to pay therefor, subsequently sells such property at a profit, does not defeat his cause of action for the original deceit.

3. VARIANCE—*when objection for, comes too late.* A variance cannot be first urged upon motion for new trial, or upon appeal.

Action on the case for deceit. Error to the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the May term, 1903. Affirmed. Opinion filed November 9, 1903.

H. L. KELLY and JOHN J. REA, for plaintiff in error; THOMAS J. SMITH, of counsel.

RAY & DOBBINS, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This case has been presented to three juries, and there have been three verdicts for the plaintiff. The first was for $1,355.51, the second for $1,420.05, and the last for $730.72. The claim of the plaintiff was that he had been defrauded by the defendants out of $4 per acre, on 320 acres of land, and that they had kept this money since March 1, 1900. The first two verdicts were for that amount and interest, and on the last trial the plaintiff, in the presence of the jury, waived one-half of the claim and insisted on the recovery of the $4 an acre only on one-half of the land, with interest, and that is the exact amount of the verdict. Upon principle the three verdicts are absolutely the same.

The record discloses the following state of facts : Kurtz and Hinton were real estate dealers in Fisher; Lane was a dealer in Sullivan. Lane had the farm of Mrs. Subinia Noble, of California, consisting of 320 acres near Sullivan, for sale. The price asked was $51 per acre, out of which Lane was to get $1 per acre commission. There was an understanding between them that, if one firm found a purchaser for the other's farm, they would divide the commissions. For a purchaser found here, Mrs. Noble would get, and only asked, $50 per acre, Lane would get $160, and

Hinton and Kurtz $160. About July 30, 1899, Hinton drove to Champaign with Ring. He told Ring that his farm was a good investment and proposed to join with him to purchase it. They made arrangements to go down the next day and look it over. At the farm the day following, Hinton told Ring that "Mrs. Noble would not take less than $55 an acre for it," and out of that they and Lane got a dollar an acre and that he would divide his half with Ring, giving him $80. Lane and Hinton both knew that Mrs. Noble only asked $50 for the land, yet when Hinton and Ring went into Lane's office, Hinton took Lane out and had a private conversation, lasting half an hour, and when they returned and Ring asked Lane if Noble wouldn't take less, Lane answered "No, they wouldn't take a cent less," and said, "All I get out of it is $1 an acre, and I have to give Hinton half of it."

The evidence further showed that Hinton, or Kurtz, his partner, had seen Lane the day before and made arrangements with him that they would advance the price $4 per acre, and that Lane should have $400 of the money instead of $160, which he would otherwise have received. This arrangement was made the day before Ring was taken down.

After some haggling over the price, in which Hinton pretended he was trying to get the land cheaper, a contract was written in which Hinton and Ring agreed to jointly purchase the land of Mrs. Noble and to pay $55 per acre for the 320 acres. Lane signed it as Mrs. Noble's agent, and Hinton and Ring for themselves. Hinton and Lane also insisted that Mrs. Noble demanded $2,000 put up as forfeit money that the contract would be carried out the following March. This was an absolute falsehood, as Mrs. Noble never demanded it and they never gave it to her.

Ring, supposing that Hinton's interest was as much at stake as his, relied upon him implicitly, and, as developments showed, the purpose of having Hinton join him in the contract, was to get him to thus rely upon Hinton.

Hinton then pretended that he did not have his share of

the forfeit money, so he got Ring to put up the whole $2,000. Almost immediately after this was placed in the bank, Lane and Hinton drew out $1,000 of it and divided it among themselves, after paying a man named Stone $50 for helping deceive Ring. Without Ring's knowledge, Hinton then had the deed made out immediately to Mrs. Ring alone. He ordered this done six months before the time for carrying out the contract, although he pretended to Ring that he was going on with his part in good faith. As the time to carry out the contract drew near, Hinton made no effort to raise his share of the money. Ring insisted on him doing so, but he finally told Ring that he was going to step down and out and turn it all over to him. Ring did not then know that Hinton had long ago done this by having the deed made to Mrs. Ring *alone*, nor did he know of the fraud perpetrated upon him. He was forced to borrow the money and pay for the whole of the farm himself, in order to prevent the loss of his $2,000 forfeit.

It later appeared that there might be a possible profit in the deal and Hinton claims he then tried to raise the money, but whatever the evidence shows as to this, the circumstances show it was not in good faith. He went with Ring to fix up the matter on February 25, and made no arrangements as to his share, although Ring was insisting that he should do so. He was in Sullivan on March 1 and 2, but did not offer to assist in preventing the forfeiture, and, finally, one day after the contract expired, Ring raised all the money, paid the whole supposed consideration, $17,750.50 and got the deed.

It was the duty of Hinton to act in good faith toward Ring in the transaction. When they assumed the relations of joint purchasers, it was Hinton's duty to fully and honestly disclose the true purchase price of the land. Hinton's failure so to do and his positive misrepresentation of the facts was a fraud for which Ring was entitled to maintain an action. Hank v. Brownell, 19 Ill. App. 189; Hank v. Brownell, 120 Ill. 163; Cox v. Gerkin, 38 Ill. App. 340; Banta v. Palmer, 47 Ill. 100; Grant v. Hardy, 33 Wis. 669;

3d Sutherland on Damages, Sec. 1163. The rule is correctly stated in Davenport v. Buchannan, 6 S. D. 376, 61 N. W. Rep. 47, where the court said:

" When one of two joint purchasers knowingly procures money from the other by wrongfully representing that the purchase price of the land is greater than was in fact required, the other is entitled to recover therefor although upon inquiry he might have learned that such representations were false."

It is contended that the court erred in sustaining an objection of proof offered by the defendant, tending to show that Ring subsequently sold the land at a good profit, over $55 per acre as a purchase price. This testimony was immaterial and the objection was properly sustained.

It is also contended that there was a variance between the proof and the allegations of the declaration. There was not, in fact. But if there was a variance its existence was not raised in apt time. It should have been brought to the attention of the court below during the trial and clearly pointed out. It is too late to raise the question here, or in a motion for a new trial in the court below, for the first time.

The record is free from error and the judgment is sustained by the law and the evidence.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*