### CLARK v. MORGAN COUNTY NAT. BANK OF FT. MORGAN et al.

(District Court, D. Colorado. January 6, 1912.)

No. 5,732.

FRAUD (§ 36*)—ACTION FOR FRAUD AND DECEIT—DEFENSES.

A plaintiff who was induced by false and fraudulent representations of defendants to purchase from them, and pay for, bonds which were in fact of no value whatever, was damaged in the amount he paid for the bonds, his damage being complete, in a legal sense, when the transaction was closed by delivery of the bonds and payment therefor; and it is no defense to an action of fraud and deceit to recover such damage that plaintiff sold the bonds to others for as much as, or even more than, he paid for them.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 31, 32; Dec. Dig. § 36.*]

At Law. Action by Bert Clark, doing business as Bert Clark & Co., against the Morgan County National Bank of Ft. Morgan, J. H. Roediger, and M. L. More. On demurrers to defense pleaded by defendants in separate answers. Demurrers sustained.

Wm. V. Hodges, of Denver, Colo., for plaintiff.

Vaile, McAllister & Vaile, of Denver, Colo., and Walter S. Coen, of Ft. Morgan, Colo., for defendants.

LEWIS, District Judge. This is an action on the case for damages on account of the alleged fraud and deceit practised by the defendants in the sale to the plaintiff of certain irrigation district bonds.

The complaint alleges that the bonds were, at the time of delivery, and ever since have been, of no value whatsoever; and further sets forth facts for the purpose of showing that said bonds were and are entirely worthless. According to the face of said bonds, they were of the aggregate par value of $227,000 and were purchased by the plaintiff in 1909 for the gross sum of $195,578.96, which latter amount he asks to recover as his damage.

The defendants file separate answers, and each of them pleads as a separate defense these facts: that in the purchase of the $227,000 face value of bonds for the sum of $195,578.96 the plaintiff was not damaged in any sum whatsoever, because the plaintiff, before he accepted or paid for any of said bonds, had sold all of said bonds to other persons for a sum greatly exceeding the amount which he had paid for said bonds, and that the moneys which the plaintiff paid for said bonds were moneys turned over to him by his vendees on their purchase and before they had received said bonds from the plaintiff, and that as soon as plaintiff received the bonds he immediately delivered all thereof to his vendees and that he has never since been the owner of any of said bonds.

The sufficiency of this defense so pleaded in each answer is challenged by demurrer.

This separate defense in each answer does not deny the allegation of the complaint, "That in truth and fact said bonds were at the time of delivery, ever since have been and now are of no value whatsoever; that the property of and within said district, upon which said bonds are secured as a lien, is of no value whatsoever, and said contracts between said district and said homestead and desert land entrymen are of no value whatsoever as security for said bonds"; nor do said defenses allege that said bonds were of value.

We are not now concerned with the question as to what is the measure of damages under the facts set forth in the complaint; but the inquiry presented by the demurrer is, would the facts set forth in these defenses, if established, be a complete defense against recovery? Apparently there are few authorities directly to the point. Those cited to sustain the demurrer are: Medbury v. Watson, 6 Metc. (Mass.) 246, 39 Am. Dec. 726; Lunn v. Shermer, 93 N. C. 164; Hinton v. Ring, 111 Ill. App. 369; Miller v. Zeimer, 12 Daly (N. Y.) 126.

The Medbury Case involved the sale of a tannery. It appeared that the vendee, who brought an action for damages for fraud and deceit by his vendor, had sold his interest in the tannery for the sum which he paid for it, and it was therefore argued that he had not been damaged. On this the court said:

"But it is further argued that the father, having sold out his share of the property for the same amount which he gave, has sustained no loss, and so there can be no recovery by the present plaintiffs. But this suggestion, though plausible is not sound. What the party sold the property for, is not the rule by which to measure the damages; otherwise, it might make the question of fraud to depend upon the rise or fall of the property in the market, upon fluctuations in the value, arising from causes in no way connected with the fraud complained of. As well might an underwriter contend that the insured has sustained no injury, because his goods, though partially dam-

aged by a peril insured against, have sold, even in their damaged state, for more than their actual cost. If the father, through fraud practiced upon him, paid a higher price than the estate was worth, and the fraud was actionable in its character, then he is entitled to recover for the injury occasioned by such fraud, whatever disposition he afterwards made of the property: whether he sold it or gave it away."

The Lunn Case involved the sale of a mule for $175. The plaintiff had disposed of the mule for what he paid for it. He had traded it for another mule on which he realized $175. It was therefore urged that he had sustained no damage. The court said:

"The defendant is precluded by his answer from contending that the plaintiff is not the party in interest. Therefore, he is entitled to recover such damages as may be the legal consequence of the fraud practiced upon him, which as his Honor (the trial court) held, was the difference between the value of the mule at the time of the purchase, if sound, and its value, if diseased, at that time, and it can make no difference what disposition the purchaser made of the mule afterwards—whether he practiced a fraud upon someone else and got more than the actual value of the mule, or gave him away."

In Johnson v. Gavitt, 114 Iowa, 183, 86 N. W. 256, it appears that plaintiff and defendant purchased lands. The defendant negotiated the trade, and represented to the plaintiff that the purchase price was ten dollars per acre, whereas in truth it was five dollars. The lands were subsequently divided between the purchasers, the plaintiff's share being 240 acres. The court said:

"After securing title to the 240 acres, plaintiff traded away 200 acres, placing on it, for trade purposes, a value of $15 per acre. It is now insisted by appellant that because of this fact plaintiff has not been harmed, and therefore should not recover. If plaintiff had received $15 per acre for his land, we do not see why the facts should avail defendant."

Hubbell v. Meigs, 50 N. Y. 480, 491:

"Where a party, with intent to cheat and defraud another, induces him, by fraudulent means, to purchase stock for value which he knows to be worthless he is liable for the damages sustained, whether the purchase is made from him or another. The elements of fraud and damage are united; and that this gives an action to the injured party is a maxim as old as the law. Upton v. Vail, 6 Johns. [N. Y.] 181 [5 Am. Dec. 210]; Medbury v. Watson, 6 Metc. [Mass.] 259 [39 Am. Dec. 726]. It is further insisted that the damages awarded to the plaintiff are greatly excessive, being the entire amount paid for the stock and interest, less the dividends received, for the reason that the stock could have been sold in the market at a trifling loss for some time after the purchase was made. This is not the measure of plaintiff's damages. That is the difference in value of the stock as the condition of the company really was, and as it was fraudulently represented to be by Alden. It is true that the price at which the stock readily sold in New York is strong evidence of its value, and would, in the absence of other proof, be controlling. But when the real pecuniary condition of the company is shown, from which it appears that the stock was worthless, the price at which it sold in New York or elsewhere is entitled to no weight upon the question of its value. The plaintiff, relying upon the statements of Alden, purchased the stock, and had a right to retain it, as he did, until he ascertained that the company was bankrupt at the time of the purchase; and when he had ascertained that it was worthless, he was under no obligation to Alden to mitigate his loss by cheating some ignorant purchaser himself. The question is, what was the stock really worth at the time of the purchase; and not what it would sell for by practicing the deceptive arts resorted to by the company and Alden to inflate the price."

No reason is perceived why the rule applicable on breach of warranty should not be applied here.

In Brown v. Bigelow, 10 Allen (Mass.) 242, it appears that the plaintiff bought a horse for $400 on a warranty. Before doing so, he had contracted to sell the horse to Adams for $425, and another horse worth $75, which latter contract was executed. Defendant's warranty failed and suit was brought for its breach. Bigelow, Chief Justice, rendering the opinion, said:

"The rule of damages for a breach of warranty on the sale of chattels is well settled and familiar. It is the difference between the actual value of the article sold and the value of the same article if it had been such as the vendor warranted it to be. The application of this rule is not changed or modified by the fact that a purchaser of a warranted article has sold it for the same or even a greater price than that which he paid for it. Medbury v. Watson, 6 Metc. [Mass.] 257 [39 Am. Dec. 726]. We doubt very much whether this rule of damages would be affected by proof that the article purchased with warranty was bought, as in the case at bar, for the purpose of being delivered to a third party under a previous contract of sale, even if such resale was made by the original vendee without warranty, so that no loss or liability whatever would be incurred by him. The disposition which a purchaser makes of property is an independent and collateral fact, having no connection with the bargain by which he acquired his title. It is difficult to see how it can have any legitimate bearing on the damages which another person ought to pay him for a breach of a wholly distinct and separate contract."

The only authorities contra which have been found are Jackson v. Collins, 39 Mich. 557, and Shaw v. Gilbert, 111 Wis. 165, 194, 86 N. W. 188, 197. In the latter case it is said:

"Deceit alone gives no right of action unless damage is suffered. * * * Surely, if a deceitfully sold promissory note was in fact paid by its maker, no cause of action in tort would exist, however valueless the note might have been. Why should its purchaser any more have a cause of action for damages if he had sold the note for its face value without recourse on himself? He would no more suffer damage in the latter case than in the former."

The requisites to sustain an action for deceit are forcefully stated in Alden v. Wright, 47 Minn. 225, 49 N. W. 767:

"The essential elements which constitute a cause of action for deceit are well stated in Busterud v. Farrington, 36 Minn. 320, and one is that the party induced to act has been damaged. He must have acted on the faith of the false representations to his damage. A party cannot sustain an action of this character where no harm has come to him. Deceit and injury must concur (Doran v. Eaton, 40 Minn. 35 [41 N. W. 244]), or, as it has frequently been put by the courts, fraud without damage or damage without fraud will not sustain the action for deceit (Taylor v. Guest, 58 N. Y. 262; Nye v. Merriam, 35 Vt. 438; Freeman v. McDaniel, 23 Ga. 354; Byard v. Holmes, 34 N. J. Law, 296; 3 Suth. Dam. 594; Cooley, Torts, 474; Bailey, Onus Probandi, 770)."

But the question remains, after assuming the truthfulness of the facts set forth in these defenses, has not the plaintiff been damaged within the legal sense of that term, notwithstanding he disposed of the bonds to some one else for the full amount or more than he paid for them. His transactions with others in that respect are nihil ad rem. Conceding all that is alleged in these defenses to be true, it still appears that when the plaintiff paid over his $195,578.96 for these bonds

and received them, he had, in consideration of his payment, pretended obligations "of no value whatsoever." He was therefore out his money and had nothing of value in its stead. His damage, in its legal sense, was "the difference between that which he had before, and that which he had after, the contract of purchase was made." Wilson v. Cattle Ranch Co., 73 Fed. 994, 997, 20 C. C. A. 244, 247.

"The true measure of the damages suffered by one who is fraudulently induced to make a contract of sale, purchase or exchange of property is the difference between the actual value of that which he parts with and the actual value of that which he receives under the contract." Sigafus v. Porter, 179 U. S. 116, 123, 21 Sup. Ct. 34, 37 (45 L. Ed. 113).

In Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39, 33 L. Ed. 279, an action for deceit, it is said:

"The defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. * * * What the plaintiff paid for the stock was properly put in evidence * * * as establishing the loss he had sustained in that particular. If the stock had a value in fact, that would necessarily be applied in reduction of the damages. 'The damages to be recovered must always be the natural and proximate consequence of the act complained of,' says Mr. Greenleaf, Vol. II, Sec. 256; and 'The test is,' adds Chief Justice Beasley in Crater v. Binninger, 33 N. J. Law, 513 [97 Am. Dec. 737], 'that those results are proximate which the wrong-doer from his position must have contemplated as the probable consequence of his fraud or breach of contract.' "

The plaintiff's sale of the bonds to others was wholly disconnected from and in no manner related to the transaction which he had with the defendants in his purchase from them and cannot be availed of by them as a shield of protection against the natural, necessary and proximate results flowing from their alleged fraudulent conduct.

3 Philipps on Evidence (Am. Ed.) page 421, lays it down that an action for money had and received can be maintained "where the money has been received on a consideration which has wholly failed, or where the money has been obtained by fraud, deceit, or duress."

The cause of action here pleaded is said to be an ancient remedy. Fraud and deceit are denounced in Holy Writ, and their consequences graphically depicted:

"Ye shall not deal falsely. Thou shalt not defraud thy neighbor." Leviticus, 19: 11, 13. "Bread of deceit is sweet to a man; but afterwards his mouth shall be filled with gravel." Proverbs, 20: 17.

An order may be entered sustaining the demurrers to the said defenses.