## HARMON et al. v. HARMON et al. (two cases.)

*(Circuit Court, N. D. Illinois.* January 4, 1892.)

1. **SPECIFIC PERFORMANCE—MERGER OF ORAL IN WRITTEN CONTRACT.**
Complainant took possession of certain land under a parol agreement with the owner, who was his uncle, that, if complainant would cultivate the land and pay a yearly rental therefor, he should own the land at the owner's death. Complainant also took a written lease from the owner, in which he agreed to keep the premises in repair. His lease was renewed from time to time, the last extension being by a written agreement, in which the lessee agreed to "quit and give up possession of said premises at the expiration of any one year, in case the party of the first part [lessor] should sell or convey all or any of said lands, or in event that either party should die, or become dissatisfied, or in case the party of the second part [lessee] should fail to pay all or any part of the yearly rents." *Held,* that the written lease and extensions thereof controlled the rights of the parties, and that specific performance of the parol agreement should not be decreed.

2. **SAME—LEASE.**
Although, by reason of the lessor's death, the last agreement for extension never went into operation, it was nevertheless a contract in writing in regard to the land, and the terms upon which complainant occupied them, in which all prior parol and written contracts were merged.

3. **SAME—INSANITY.**
The fact that the lessor's mind had become impaired by age renders such written agreement none the less operative against complainant, who was in full possession of his faculties.

4. **JUDGMENT—EQUITABLE RELIEF.**
Judgment upon promissory notes given by complainant to lessor will not be set aside by reason of a parol agreement, at the time the notes were given, that upon the regular payment of interest, which was reserved by the notes during lessor's life, the notes should become void at the latter's death.

In Equity. Bills by Jacob M. Harmon and Jeremiah R. Harmon, respectively, against Anthony Harmon and others, beneficiaries under the will of Jacob Harmon, deceased, for the specific performance of parol contracts made by the deceased with complainants. The two cases were argued together. Bills dismissed for want of equity.

*Doyle, Morris & Pierson,* for complainants.

*J. S. Norton* and *J. W. Howell,* for defendants.

BLODGETT, District Judge. These are bills in equity for specific performance of parol contracts alleged to have been made between complainants, respectively, and one Jacob Harmon, whereby Jacob, who was the uncle of complainants, being the owner of a large tract of land in Iroquois county, in the state of Illinois, agreed with complainants that, if they would move onto the land described in the two respective bills, and improve the same, and pay him an annual rental, at an agreed rate, from time to time, per year, as long as he lived, the land should become theirs at his death. Jacob Harmon died in February, 1885, and by his will, made a couple of weeks prior to his death, an entirely different disposition of the property in question was made from that alleged in these bills, and this bill is filed against the beneficiaries under the will to enforce the specific performance of the alleged contract. The two cases stand upon substantially the same proofs, and have been argued and considered together.

There is but little, if any, conflict in the testimony in the cases. Complainants' testimony tends to show that, in the year 1871, Jacob Harmon, who was then a man well advanced in years and a bachelor, was then the owner of about 3,100 acres of land in Iroquois county, in this state, proposed to complainant Jacob M. Harmon that if he (Jacob M.) would move onto a part of said land, and improve it, and pay him a rental yearly therefor, as they from time to time agreed, he, the said complainant, should own the land at Jacob's death. The proof also shows that complainant Jacob M. Harmon moved onto the land, and took possession of about 1,500 acres of it, which he improved by fencing, cultivating, draining, and the erection of houses and farm buildings, and has continued in such possession from that time until the filing of these bills; that in 1874 a similar arrangement was made with the complainant Jeremiah R. Harmon, in regard to about 800 acres of land adjoining, on the east, the lands occupied by Jacob M. Harmon. The proofs offered in support of the bills is found mainly in the testimony of complainants themselves, and in statements made from time to time by Jacob Harmon to the various persons with whom he was intimate, to the effect that he had given the boys the land; that they would own it at his death; that all he wanted was that they should pay him his rent as long as he lived. The proof also shows that, on two different occasions, Jacob Harmon had deeds made to each of these complainants, of the lands he had put them in possession of, respectively, but fails to show that these deeds were ever delivered.

Were this testimony standing alone, it might be deemed sufficient, especially under a series of cases decided by the supreme court of Illinois, to sustain a decree for the specific performance of this parol promise or agreement to each of these complainants. But the proof also shows that, at the time these respective complainants took possession, they, each of them, took a written lease from Jacob Harmon, signed by themselves and Jacob Harmon, in which complainants agreed, not only to pay rent, but to plant hedges, keep the premises in repair, and in many respects to do things entirely inconsistent with the idea that they were the substantial owners of the land, subject only to Jacob's rental during his life. The original lease to each complainant ran for a term of two years, and contained an agreement by complainant Jacob M. Harmon to replant and properly care for a hedge, and charge the lessor, Jacob Harmon, one dollar per day for doing so, and to keep the fences and buildings in repair; and substantially the same agreement was embodied in the lease to Jeremiah R. Harmon, the other complainant. These original leases were extended, from time to time, generally for the term of two or more years, until the last day of January, 1882, when an extension was made to the 1st day of March, 1885. In October, 1884, these leases were extended by agreement in writing for the term of two years from the 1st day of March, 1885, This agreement for extension contains a provision that the lessee will "quit and give up possession of said premises at the expiration of any one year, in case the party of the first part [lessor] should sell or convey all or any part of said lands, or in

the event that either party should die, or become dissatisfied, or in case the party of the second part [lessee] fail to pay all or any part of the yearly rents or interest, on or before the 1st day of November of any one year." There was also the usual agreement to keep the premises in repair which had been incorporated in the original leases and extensions.

It is urged in regard to this lease of October, 1884, that it never went into operation. But it was, nevertheless, a contract in writing in regard to these lands, and in regard to the terms upon which these complainants occupied it, and operated to extend the former lease for the term of two years. It is also urged that Jacob's mind had become impaired by age and infirmities, so that these leases should not have the force and effect of contracts between him and the complainants. The fact, if it is a fact, that Jacob Harmon's mind became impaired by age is no defense, as against these written contracts, for these complainants, they being fully competent to make contracts and attend to their own business. *Burnham* v. *Kidwell*, 113 Ill. 425. The instruments might be voidable on the ground stated, as against Jacob Harmon, but they are operative against the other parties, who were in full possession of their faculties; and, even if the earlier agreements between the parties in writing might possibly be reconciled with the parol agreement set up, which I do not think possible, yet there can be no doubt that all prior parol and written agreements were merged in the final agreement of October 31, 1884. This superseded everything that had gone before it, in relation to this land, and must stand as the contract between these complainants and Jacob Harmon at the time of his death.

The complainants, then, are endeavoring to enforce a specific performance of a contract relating to lands, wholly by parol, and where the testimony shows they had made written contracts in relation to the same subject-matter. It seems to me that this impinges upon the general rule that—

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a' previous *colloquium* between the parties, or of conversations or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." 1 Greenl. Ev. § 275.

The reason for this rule is thus stated by Lord COKE:

"It would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by the averment of the parties, to be proved by the uncertain testimony of slippery memory; and it would be dangerous to purchasers and all others in such cases if such nude averments against matter in writing should be admitted." Lord COKE, in *Countess of Rutland's Case*, 5 Coke, 26a.

"If a written instrument is perfect in itself, it must be the sole expositor of the intention of the parties to it, and parol proof of an agreement between

them, not reduced to writing, which is repugnant to the terms and intention expressed in the written instrument, cannot be allowed." *Grey's Heirs* v. *Grey's Adm'rs*, 22 Ala. 233, 237.

In *Forsyth* v. *Kimball*, 91 U. S. 291, it was said:

"It is a firmly-settled principle that parol evidence of any oral agreement alleged to have been made at the time of the drawing, making, or indorsing of a bill or note cannot be permitted to vary, qualify, or contradict, or add to or subtract from, the absolute terms of the written contract."

And in *Harris* v. *Galbraith*, 43 Ill. 309, the court said:

"The rule is, where a contract is reduced to writing, that the writing affords the only evidence of the terms and conditions of the contract. All antecedent and contemporaneous verbal agreements are merged in the written contracts. The law will not allow that an agreement may rest partly in writing and partly in parol; so that it is equally inadmissible to add to, take from, or specifically change the terms of a written agreement by parol."

Further citations to the same effect might be made, but these are enough. This rule stands as a sentinel over all written contracts to prevent them from being disturbed by the introduction of parol testimony inconsistent therewith. By the terms of the lease, these complainants assumed the relation, under an agreement in writing, of tenants of Jacob Harmon; and if, at any time, they had refused to surrender the premises at the expiration of the leases, or the extensions thereof, it would have been no defense to the complainants in an action for forcible detainer that Jacob Harmon had made a parol contract at the time, or before the time of making these leases, inconsistent with the terms of the leases themselves. The leases, and the extensions of the leases, would have determined the rights of these parties in such a proceeding, and, as it seems to me, they must conclusively do so now.

The record also shows that these complainants became indebted to Jacob Harmon on certain promissory notes, bearing interest at the rate of 10 per cent. per annum, upon which notes suits have been brought by the executors against the complainants, and judgments rendered in this court; and by these bills complainants seek to have these judgments set aside, or perpetually enjoined, by reason of the alleged parol agreement between themselves and Jacob Harmon, at the time the notes were given, that, if they would pay him the interest regularly, which was reserved by the notes during his life, the notes should become inoperative and void after his death, and should never be collected or enforced against them. I hardly need say that the relief upon this branch of the case is effectually barred by the rule I have cited in regard to the lands. The notes must be the evidence of the contract between the complainants and Jacob Harmon, and not the parol agreement inconsistent therewith. *Forsyth* v. *Kimball*, 91 U. S. 291. I may say, further, that upon the trial of the suits at law, which were in this court, the defendant offered evidence in defense of those suits that is now offered in support of that part of the bills for setting aside and enjoining the judgments; and this court overruled the defense, and gave judgment upon the notes, which judgment the supreme court of the United States

affirmed. *Harmon* v. *Adams*, 120 U. S. 363, 7 Sup. Ct. Rep. 553. For these reasons the bills of complaint in both cases are dismissed for want of equity.