WILSON v. NEW UNITED STATES CATTLE-RANCH CO., Limited.

(Circuit Court of Appeals, Eighth Circuit.  March 30, 1896.)

No. 494.

1. ELECTION OF REMEDIES—RESCISSION OF CONTRACT—ACTION FOR FRAUD.
    A vendee who has been induced by the fraud of his vendor to make a contract of purchase, which contains warranties made by the vendor,

has a choice of remedies. He may rescind the contract, restore what he has received, and recover back what he has paid, or he may affirm the contract, recover the damages he has sustained for the fraud, and also those resulting from a breach of the warranties of the vendor, but he cannot do both.

2. FRAUD—MEASURE OF DAMAGES.

The measure of damages upon a rescission of a contract of purchase is the consideration paid and the moneys naturally expended on account of the purchase before the fraud was discovered.

3. SAME.

Upon an action for damages for the deceit and fraud, the measure is the difference between that which the vendee had before and that which he had after the contract or purchase was made.

4. BREACH OF WARRANTY—DAMAGES.

Upon an action for the breach of the warranties contained in a contract of purchase, the measure of damages is the difference between the value of the property actually received and its value as it would have been if the warranties had not been broken.

5. JOINDER OF ACTIONS.

The two latter causes of action may be maintained together, but each of them is inconsistent with the action for rescission.

6. CONTRACTS—BREACH AND RESCISSION.

The N. Co. entered into a written contract with W. for the purchase of a cattle ranch and 6,000 head of cattle for about $300,000 and some stock in the corporation; such contract containing various covenants and warranties as to the number and description of the cattle and other matters, and mortgages being given on the land and cattle to secure the purchase money. W. afterwards entered on the ranch, took possession of the cattle, and sold them under the chattel mortgage. Thereupon the N. Co. brought an action against W., alleging that W., by fraudulent misrepresentations, induced it to make the contract and pay the portion of the purchase price which it had paid; that W. had made covenants and warranties which he had broken; that it did not ascertain, until the time of the sale under the chattel mortgage, the frauds practiced by W., and immediately thereafter, on account of the failure of W. to carry out the contract, and his deceit and fraud, it renounced the contract and demanded repayment of the moneys laid out by it, alleged to amount to $250,000; that it had always been willing to carry out the contract, but W. had failed to perform, so that the consideration had failed, and loss had been inflicted upon it; and thereupon it demanded judgment for $250,000. *Held,* that the attempts, made by such pleading, to maintain an action for the affirmance and for the rescission of the contract at the same time were inconsistent with each other.

7. SAME—WRITTEN AND ORAL.

The court also charged that the jury might consider all the facts and circumstances, and the representations made by W. and relied on by plaintiff, in determining what warranties were made by W. *Held* error, as the parties had carefully embodied their contract in writing, and all prior representations and oral contracts were merged in such writing.

8. SAME—WARRANTY—MEASURE OF DAMAGES.

The court also charged that if the jury found that W. had warranted that there were 800 beef cattle in the herd, and there were not such cattle therein, plaintiff would be entitled to a deduction from the contract price of the value of 800 such cattle. *Held* error, since, even if there were such warranty, and a breach thereof, the measure of damages would be only the difference in value between 800 beef cattle and 800 of the best in the herd,—not the full value of the 800 beef cattle.

In Error to the Circuit Court of the United States for the District of Colorado.

At some time in the early part of 1884 the New United States Cattle-Ranch Company, Limited, a corporation, and the defendant in error herein, agreed to purchase of William J. Wilson, the plaintiff in error, the Circle ranch,

which was located on the Republican river and some of its tributaries in the states of Nebraska, Colorado, and Kansas, and 6,000 head of cattle grazing thereon, and to pay therefor about $300,000 in money and some stock of the corporation. By this contract, and its various modifications, the plaintiff in error covenanted to convey to the vendee a good title to 3,000 acres of land, and to deliver to it 6,000 head of cattle. The vendee paid $63,850 of the purchase price, took possession of the ranch and of some of the cattle, and gave a bond and mortgages upon the cattle and the land to secure the payment of the balance of the price. The vendor made a bill of sale of the cattle, and a deed of 453.80 acres of the land to the vendee, and also gave to it a bond to convey a good title to the remainder of the 3,000 acres of land. All these papers were deposited with a bank in the city of Denver, to be delivered to the vendee if it paid the balance of the purchase price according to their terms, and to be delivered to the vendor if the vendee failed so to do. It was also agreed that the moneys realized from the sales of the cattle meanwhile should be applied in part payment of the purchase price. On the 22d day of July, 1885, the vendor entered upon this ranch, took possession of the cattle and personal property thereon, and in the month of September sold them under the chattel mortgage given by the vendee for a default in the payment of an overdue installment of the purchase price. Thereupon the cattle company brought an action against the plaintiff in error in the court below for $250,000. It alleged in its complaint that the plaintiff in error had by false and fraudulent representations as to the number and character of the cattle, and as to his title to the 3,000 acres of land, and as to the quantity of other land to which he had the right of possession, and as to the previous sales of cattle from this ranch, and as to various other matters connected with the transaction, induced it to make the contract of purchase and the various modifications thereof, and to pay that portion of the purchase price which it had paid. It also alleged that the plaintiff in error had made covenants which he had not kept, and warranties which he had broken. After setting forth these various false representations, which the defendant in error averred had induced it to make the contract of purchase, and the various covenants and warranties which it alleged the plaintiff in error had made and broken, it closed the statement of its cause of action with these two allegations: First, it alleged that it did not ascertain until after the 19th day of September, 1885, on which day the personal property was sold under the chattel mortgage, the frauds and tricks practiced upon it by the vendor in counting and delivering the cattle, and that immediately thereafter, on account of shortages and violations of the agreement, on account of the substantial failure of the vendor to carry out his contract, on account of the entire failure of said transaction, and on account of the deceit and fraud of the defendant, and the failure of the consideration which induced it to enter into the contract, it renounced the said contract of purchase, and demanded repayment of the moneys it had laid out and expended, which, it alleged, amounted to $250,000; second, it alleged that, at all times after the making of the contract and of the modifications thereof, it had been willing and had offered to carry out and perform its part thereof, upon the performance by the plaintiff in error of his promises and undertakings contained therein, but that he had utterly failed and neglected to perform the contract on his part, so that the considerations which induced the plaintiff to enter into it had utterly failed, and the objects and purposes to be attained thereby were completely destroyed, and great loss and damage was inflicted upon it by the fraud and deceit of the defendant, and by his failure to perform his contracts and undertakings, and to make good his representations and statements. These allegations are followed in the complaint by a prayer for $250,000, and interest from September 19, 1885. Issues were joined upon the averments of this complaint, and upon their trial the jury returned a verdict against the plaintiff in error for $50,000. It is the judgment upon this verdict that is attacked by this writ of error.

Chas. S. Thomas (W. H. Bryant was with him on the brief), for plaintiff in error.

Chas. J. Hughes, Jr. (Tyson S. Dines was with him on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The futile attempt of the defendant in error to maintain an action for affirmance, and an action for rescission of its contract of purchase, upon the facts pleaded in its complaint, has resulted in such inextricable confusion of the rules of law applicable to the trial of this case that the judgment below must be reversed. When a vendee ascertains that he has been induced to make a contract of purchase by the fraudulent misrepresentations of his vendor, he has a choice of remedies. He may rescind the contract, restore what he has received, and recover back what he has paid, or he may affirm the contract, and recover the damages he has sustained by the fraud. He cannot, however, do both. It is as difficult a feat to maintain a cause of action for the consideration paid for the purchase on the ground of rescission, and one for damages for the fraud which induced it, and for a breach of the contract of purchase itself, in the same action, as it is to ride at the same time two horses that are traveling in opposite directions. Upon a rescission of a contract of purchase, the measure of damages is the consideration paid and the moneys naturally expended on account of the purchase before the fraud was discovered. Upon an action for damages for the deceit and fraud which induced the purchase, the measure of damages is what the vendee has lost. It is the difference between that which he had before, and that which he had after, the contract of purchase was made. Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. 39; Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139. Upon an action for a breach of the covenants and warranties contained in the contract of purchase, the measure of damages is the difference in value between the property actually received, and its value as it would have been if the warranties and covenants had not been broken. The two causes of action last mentioned are consistent with each other, and may be maintained together; but each of them is inconsistent with the cause of action for rescission, and neither of them can be maintained at the same time with that cause of action. One who has been induced by fraud to make a disadvantageous contract of purchase may affirm the contract, and sue for its breach by the vendor, and at the same time may recover of him the damages which resulted from the fraud which induced the contract; but he cannot recover for a breach of the contract, and for the fraud which induced it, and at the same time recover the consideration which he paid for it. He cannot have the benefit of the contract which he purchased with the consideration, and also have the consideration itself. The court below perceived this dilemma, and, in opening its charge to the jury, it told them that the defendant in error sought to recover on either of three grounds: First, on the ground of deceit; second, on the ground of a breach of express warranties; and, third, on the ground of a rescission of the contract,—but that they need not consider the latter ground, except to ascertain whether or not the whole consideration to the plaintiff failed on account

of the fraudulent acts and practices of the defendant. The court then attempted to keep these three grounds of recovery distinct, and it charged the jury that, if they found that the contract and its modifications were induced by deceit, the defendant in error might recover the proper measure of damages for that fraud, and that if they found no deceit, but found that there was a breach of express warranties, the defendant in error might recover damages on that ground, and that if there was an entire failure of consideration, as there would be in case of rescission, the defendant in error might recover all its expenditures on account of the contract. This attempt, however, proved futile. The different measures of damages applicable to the three causes of action became inextricably confused before the charge closed; and the court advised the jury, among other things, that if they found that through the failure of the plaintiff in error to fulfill his warranties, and the retaking of the property by the plaintiff in error under his chattel mortgage, there was an entire failure of consideration to the vendee, they might give to the cattle company a verdict for the moneys it had paid to the vendor with interest from September 19, 1885, and for all the expenses it had paid on account of the purchase. In other words, the court charged that the jury might give the same damages for the breach of the warranties in the contract that they might have given in case of the rescission of the contract. If we apply this portion of the charge of the court to a single warranty, its error is apparent. One of the guaranties contained in the contract was that there were 6,000 cattle on the ranch, and that the vendor would gather and deliver to the vendee 5,400 cattle of all ages during the season of 1884. The breach of this guaranty alleged in the complaint was that there were not more than 3,000 cattle in the herd at the time the contract was made, and that the vendor did not deliver during the season of 1884 more than 4,000 cattle of all ages. It is obvious that the measure of damages for this breach was the difference in value between the herd as it was and as it was warranted to be, and not the consideration paid for, nor the expenses paid on account of, the contract. Nor could the fact that the vendor some months later seized the cattle then upon the ranch, under an alleged default in the mortgage given to secure the payment of the balance of the purchase money, change the measure of damages upon the warranties, or substitute for it the measure of recovery allowed upon a rescission of the contract.

The court fell into another error in its treatment of the warranties alleged in the complaint. It charged the jury as follows:

"You may take into consideration all the facts and circumstances, in determining what, if any, warranties defendant made, or caused to be made; statements made by the defendant, or caused to be made, if any, by him, not made as mere matters of opinion or belief, but affirmations of existing facts as facts, for the purpose of assuring the plaintiff or its agents, or both, of the truth of the facts affirmed, and inducing the plaintiff to make the purchase of the ranch and property in question; and such statements, if any, relied on by the plaintiff and its agents, or either, in making said purchase, or entering into said contract, or acting in respect thereto, may authorize you in finding an express warranty, if you think it ought to be found from the evidence and all the circumstances of the case."

Again, it charged the jury with reference to a representation that there were 800 beef cattle in the herd, which was made before any of the written contracts were signed, as follows:

"The court charges the jury that if they find from the evidence that it was represented by the said defendant, or his agent, that there were in said herd eight hundred beef cattle ready for the market, that this was a material representation, for the truth of which the said defendant was responsible, and that, if said cattle were not there as represented, then the said plaintiff had a right to a deduction from the contract price, and from the first payment thereon of the value of the cattle which were not there according to said representation, and the said defendant was under obligation to make reduction therefor; and this although there may be no special mention or reference in the contract itself to the number of the said cattle, for the reason that the said plaintiff had a right to rely upon the statement and declaration and representation made by and for the said defendant as to their existence and presence in said herd."

These portions of the charge were erroneous and misleading in the case now before us. It may be that some portions of them could be sustained in a case in which the parties to the sale had not reduced their contracts to writing, but they were certainly not applicable to the case at bar. The parties to this suit embodied their agreement of sale in a written contract, and signed it. So careful were they that there should be no question what their contracts were and what they were not, that they reduced to writing and signed no less than five agreements of modification of their original contract. In these various agreements the vendor made certain express warranties. He guarantied that the herd sold should consist of 6,000 cattle which should be well graded American stock, free from Texas or Spanish pedigree, and should include 30 full-blood Durham bulls; that he would deliver all these cattle by the close of the round-up season of 1885; and that he would deliver 5,400 cattle of all ages during the season of 1884. But he nowhere in these contracts guarantied or agreed that there were 800 beef cattle in this herd, or that he would deliver any such cattle to the purchaser. The defendant in error made no plea of any mistake in the draft of these contracts. It made no demand for any change or reformation of any of them. From these facts the legal inference irresistibly follows that all prior representations, statements, and declarations made in good faith, and all prior oral contracts, were merged in these written agreements, and that they contained all the warranties and guaranties that the parties to these negotiations made. They contained some warranties. The conclusion is irresistible that when they were made the parties selected from their oral representations those declarations, and all those declarations, which they agreed to warrant or guaranty, and embodied them in these written agreements. "Expressio unius est exclusio alterius." In the absence of fraud or mistake in reducing complete contracts of sale, containing warranties, to writing, the presumption is conclusive that they contain all the warranties that the parties intended to make or did make. The supreme court of Minnesota states the rule thus:

"Where the parties have deliberately put their engagements into writing, in such terms as to import a legal obligation, without any uncertainty as

to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the manner and extent of their undertaking, was reduced to writing." Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1; 1 Greenl. Ev. § 275; Barnes v. Railway Co., 12 U. S. App. 1, 7, 4 C. C. A. 199, and 54 Fed. 87; McMurphy v. Walker, 20 Minn. 382, 386 (Gil. 334); Harmon v. Harmon, 51 Fed. 113, 115.

The result is that the plaintiff in error was not liable for the breach of any guaranties or warranties not found in his written contracts, and it was error for the court to instruct the jury that they might find that any statements of facts which he made to induce, and which did induce, the contract of sale, were express warranties, for whose breach he was liable. Moreover, if the plaintiff in error had warranted that there were 800 beef cattle in the herd sold, and there were in fact no such cattle there, the measure of damages for the breach of this warranty would not have been the value of 800 beef cattle. It is conceded that there were more than 800 cattle in the herd, and the measure of damages for the breach of a contract that 800 of them were beef cattle could not be more than the difference between the value of 800 beef cattle, and the value of 800 of the best cattle found in the herd. The defendant in error had a written guaranty of the number of the cattle in the herd, for the breach of which it was entitled to recover the difference between the value of the number of cattle actually there, and the value of the 6,000 cattle guarantied to be there. If, in addition to these damages, it could also recover the value of the 800 beef cattle, the plaintiff in error would, in effect, be required to furnish the equivalent of 6,000 cattle guarantied in his written contract plus 800 beef cattle, or in all 6,800 cattle, and that was not the contract.

There are many other assignments of error in this case. Those which we have noticed present basic questions that will return for consideration upon the second trial. Many of those raised by the other assignments present minor questions that may not arise again, and it would serve no good purpose to extend this opinion by noticing them.

The fundamental principles which must govern this case are: One who is induced to make a disadvantageous contract of purchase by the fraudulent misrepresentations of his vendor has a choice of remedies. He may, upon the discovery of the fraud, rescind the contract, restore what he has received, and recover what he has paid, or he may enforce the contract, and recover the damages caused by the fraud which induced him to make it, but he cannot do both. If he chooses the latter remedy he may recover, for the fraud which induced the contract, the difference between the value of what he had before he made the contract, and the value of what he would have had after the contract was made, if it had been duly performed by both parties to it. In addition to these damages, if the vendor has unlawfully failed to perform his part of the contract and to keep his warranties, the vendee may recover, as damages for such breaches, the difference between the value of the property actually received, less that portion of the purchase price secured to the vendor by the mortgage back upon it, and the value

which the property would have had, less that portion of the purchase price secured to the vendor by the mortgage back upon it, if the contract had been duly performed. A careful application of these rules will, we think, result in an impartial trial of this case. The judgment below must be reversed, and the case must be remanded to the court below, with directions to grant a new trial, and it is so ordered.