No. 17,594.

JOHN B. DUMAS *v.* CLARA A. KLATT.

(288 P. [2d] 642)

Decided September 19, 1955.   Rehearing denied October 31, 1955.

Messrs. O'NEILL & O'NEILL, for plaintiff in error.

PATRICIA H. MALOY, Mr. E. F. CONLY, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

THIS action, by stipulation, is based on rescission only. The finding and decree of the trial court is to that end.

Defendant in error, referred to herein as plaintiff, on July 2, 1951, purchased from defendant, through his agent, Western Securities Company, a duplex property consisting of two units for the sum of $24,000, which was paid $8,900 in cash and $15,100 by two pieces of real estate of that agreed value. Defendant soon thereafter conveyed to others the two properties received by him as part payment. The evidence discloses that prior to the conveyance from defendant to plaintiff of the property here involved, defendant and his agent represented that defendant was a competent, reputable and experienced contractor; that defendant, as owner of the premises, had acted as the building contractor in the construction thereof; that it was represented to plaintiff by defendant and his agent that the duplex had been constructed in a workmanlike manner and would require no repairs for at least ten years; and that the duplex complied with the requirements of the building code of the City and County of Denver. These representations proved to be false, and were known to defendant to be false at the time they were made for the purpose of inducing plaintiff to purchase the property. Without a detail of the voluminous record, the evidence is replete with convincing proof that defendant did not approach being what he and his agent represented him to be in the way of an experienced contractor, and the evidence is equally convincing that the structure involved was far short of the ordinary standards of construction. From his own testimony it appears that defendant had no experience whatever as a building contractor and had only a temporary permit to so operate. His only experience was that of observation of the work of other contractors over a period of twenty years as a painter. There is no denial of plaintiff's allegations and proof that the construction was faulty and below standard, and that this appeared within a few months after plaintiff acquired

the property and took possession. Defendant's good faith and sincerity in negotiating the sale to plaintiff hovers between scarcity and nonexistence. Defendant's agent, Western Securities Company, was equally culpable in this transaction; however, since plaintiff elected to proceed in rescission, relief could only be granted against defendant as principal and not against the Securities Company, his agent.

Within a few months after the transaction, plaintiff discovered the faulty construction of the building and that it was not as represented, and immediately tendered a conveyance of the property back to defendant, which was refused. The same tender was made into court. Immediately following this refusal, plaintiff instituted this action in which she prayed for rescission of the sale and purchase contract and that the consideration therefor be returned by defendant, and that the parties be placed in status quo by such an accounting between them as might be necessary, or in the alternative, that plaintiff have judgment herein in the amount of $4,000 plus costs.

Defendant testified that during the late fall of 1950, he learned from a representative of the Securities Company that plaintiff was interested in having a double house built; that he contacted her at her home and told her that he was a builder and invited her to inspect some doubles he had built; that in May, 1951, he met plaintiff on a property the agent had told her to look at; at that time he told plaintiff that he had been the general contractor on the job when, as a matter of fact, his sole activity as a builder consisted of financing, and someone else had done the actual construction work for him. The doubles which he had told her he had built were so erected. He further testified that most of the construction work on the property in question was done by a contractor. He testified that he had three talks with plaintiff during the negotiations and told her that it was a well-built house, and that it complied with the building code. All of defendant's testimony amply supported the allega-

tions of plaintiff's complaint concerning the faulty construction, as well as the misrepresentations made by him. At the conclusion of the evidence, the trial court made findings of fact and conclusions of law in which it found that the representations of defendant were false and made with the knowledge that they were false, and that plaintiff relied on each and all of such representations to her injury, and decreed that the transaction be rescinded and the parties placed in status quo by defendant paying plaintiff the sum of $19,094.42, the purchase price of the premises, $24,000, plus the amounts expended by her, $1,182.18, less the amount of $6,717.76 received by her as rentals from the premises involved, and that plaintiff convey same to defendant. Motion for new trial was overruled and defendant prosecutes a writ of error on the ground that the trial court erred as a matter of law in entering a decree of rescission; that the court completely misinterpreted and miscontrued the evidence in the case; that its findings were not in conformity with the evidence; that the decree of rescission could not under any circumstances restore the parties to status quo; and that the judgment of the trial court is nothing more than a decree for damages and judgment against defendant when no damages were proven in the case.

It is interesting to note in defendant's brief in support of these contentions that there is a notable omission of reference to defendant's own testimony. Apparently for want of a better reason, defendant contends that plaintiff failed to carry the burden of establishing a right to a rescission or any other relief. Plaintiff could well have rested her entire claim on defendant's own testimony, wherein he clearly testified himself out of court so far as his defenses were concerned.

■ Defendant makes much of the fact that plaintiff has not attempted to repair the property. She began this action in November after discovery of the many defects in the structure and the misrepresentations of defendant and his agent. All she did during the period be-

tween commencement of the action and the trial thereof was to pay taxes, water rents, and collect the rents, which were collected with the approval of defendant's attorney and which were, as a part of the judgment, finally awarded to defendant. As has long been settled in this jurisdiction, when plaintiff discovered the facts that established fraud at the inception of the deal, she had the option of seeking rescission or of affirming the contract and seeking damages. According to the general rule in actions for a breach of contract, it is incumbent upon the party seeking rescission to show that damages would not compensate; however, in this case, rescission is based on fraud at the very inception of the deal. It is contended that when plaintiff continued to rent the premises after her alleged discovery of fraud that she thereby affirmed the contract. This contention does not avail the defendant, since she was entitled to preserve the status quo of the premises in the event that her prayer for rescission be denied.

If, as contended by counsel (though not by defendant himself), the house or structure is only what it was represented to be, then defendant, by the decree herein, suffers no disadvantage. He will have restored to him a house which he built and which he attempted by misrepresentations to pass on to plaintiff. Plaintiff receives no profit from the attempted investment of her money and property, some of which has been in the possession and use of defendant; however, the trial court in determining the question of returning the status quo between the parties, resorted to the only relief possible under the circumstances; that is, by making an adjustment according to the facts pleaded and the evidence in support thereof. The exact status quo of these parties could not be re-established, because defendant had placed beyond his reach the property received as part of the purchase price paid to him, and as a substitute for the exact status quo the trial court decreed, as nearly as possible, its equivalent.

338

The findings and judgment of the trial court are abundantly supported by the evidence, the controlling part of which is uncontradicted, and we should not, and will not, disturb such judgment, which, accordingly is affirmed.