Royden BROWN, Appellant,

v.

Herbert B. ALKIRE, and Forest S. Alkire, Appellees.

No. 6730.

United States Court of Appeals
Tenth Circuit.

Sept. 21, 1961.

Clarence L. Ireland, of Ireland, Ireland, Stapleton & Pryor, Denver, Colo. (Wilbur M. Pryor, Jr., Denver, Colo., on the brief), for appellant.

Fred M. Winner, Denver, Colo. (William G. Berge and Warren O. Martin, Denver, Colo., on the brief), for appellees.

Before PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

Royden Brown brought this action against Herbert B. Alkire, Forest S. Alkire, and others, to recover the balance due on a promissory note which the Alkires had endorsed and the amount which he had paid in satisfaction of an indemnity agreement, the responsibility of which the defendants had assumed. Brown's action grew out of a transaction involving the exchange by the Alkires of their stock in First, Inc., a corporation controlled by Brown, together with certain other considerations for stock in Consolidated Distributors, Inc. of Colorado, a subsidiary of First, Inc., plus other assets of First, Inc. The Alkires admitted their endorsement on the note and the assumption of the indemnity agreement, but alleged that these were obligations created as the result of a scheme by Brown to defraud them, and that they lacked consideration. The case was tried and submitted to a jury upon these issues, and it returned a verdict in favor of Brown for $5,000. Brown appeals from the judgment entered on this verdict, contending that the court erred in not granting his motion for a directed verdict or, in the alternative, that the court abused its discretion in overruling his motion for a new trial, for the reason that, according to the evidence and the court's instructions, the verdict was inadequate.

The Alkires, who were brothers, had been jointly engaged in the farming and ranching business near Wiggins, Colorado since about 1945. In 1949 Royden Brown became cashier of the First National Bank of Fort Morgan, Colorado, and in several months he acquired a controlling interest in its stock and became president of the bank. Soon after Brown became associated with the bank at Fort

Morgan, the Alkires began doing their banking there. In addition to the usual banking transactions they obtained loans from the bank to finance their farming and ranching operations. Neither of the Alkires had more than a high school education, and their business experience was limited to farming and ranching. They sought Brown's advice in making these loans and in connection with their other business activities, and they relied on his advice in their business affairs.

In 1952 the Alkires considered dissolving their partnership, and decided to sell their ranch. They discussed this possibility with Brown, and he advised them it would facilitate a sale if they would borrow the maximum amount that they could with the indebtedness being secured by a first mortgage on the ranch property. Acting on this advice the Alkires borrowed $50,000. This loan was obtained in the fall of 1952 through the services of First Property Management, Incorporated, a corporation which Brown controlled, which received a fee of $1,000 for its services.

In addition to his duties as president of the bank, Brown was also president of First, Inc. He owned a controlling interest in this corporation, and his stock in the bank was held by the corporation rather than by Brown personally. First, Inc. was also the parent corporation for several subsidiary corporations, including Consolidated Distributors, Inc. of Colorado. This latter corporation was engaged in the business of marketing farm machinery, particularly ditchers and scrapers.

Brown's advice was solicited or volunteered with respect to a use for the $50,000 in loan proceeds, and acting upon his advice the Alkires invested this amount, together with an additional $10,000 in capital stock of First, Inc. For personal reasons relating to pending litigation involving his capital stock in the First National Bank of Fort Morgan, Brown, a few months later, deter-

mined that it was necessary to liquidate First, Inc. He informed the Alkires of this intention, and advised them and some other stockholders to exchange their stock in First, Inc. for the stock of Consolidated Distributors, Inc. of Colorado. Although this was the basic transaction, it was also understood that the Alkires and their associates were to furnish consideration in addition to their stock in First, Inc., and that they were to receive other assets of First, Inc. in addition to the stock in Consolidated Distributors. Brown told them that this exchange was essential to the liquidation of First, Inc.

The terms of the final agreement are partially disclosed in the minutes of a May 22, 1953 meeting of the Board of Directors of First, Inc. It appears from those minutes, as interpreted by testimony and evidence in the record, that the Alkires were to acquire from First, Inc. a $70,625 note executed by Kenneth Miller and his wife [1] at its face value, a $60,000 note executed by Consolidated Distributors, Inc. for which they were to pay $50,000 plus another $10,000 if they succeeded in selling the inventory for a certain amount, and all the stock of Consolidated Distributors, Inc. of Colorado which was valued for purposes of this transaction at $6,000. In partial payment for these assets of First, Inc. the Alkires and their associates were to surrender their stock in First, Inc. for which they had paid $80,000, and they were to sign two promissory notes, one to Conrad Laubhan for $15,000 and the other to Frank Stevens for $10,000. Laubhan and Stevens agreed to surrender their stock in First, Inc. in exchange for these notes. The Alkires and their associates also agreed to assume certain guaranties that had been made with respect to the indebtedness of Consolidated Distributors, Inc. Brown testified that this left a balance in favor of First, Inc. which was to be paid by cash and the execution of another promissory note. In computing the value of the assets con-

---

1. One of the main items sold by Consolidated Distributors, Inc. was a rotary scraper patented and manufactured by Miller.

veyed he determined that there was due an additional $11,625. He caused a note in this amount, payable to him personally, to be executed by Consolidated Distributors, Inc., and, at a meeting held to wind up the transaction, he presented it to the Alkires for their endorsements.

Consolidated Distributors, Inc. subsequently paid $625 on this note. The balance was not paid, and the plaintiff's first cause of action is for the recovery of the balance of $11,000, together with interest and attorney fees. The second cause of action was to recover the amount Brown was required to pay in satisfaction of a guaranty of indebtedness that the defendants had assumed, and it was agreed that the maximum recovery was $5,000.

The appellees first contend that all of the evidence introduced at the trial has not been reproduced, and that since the statement contemplated by our Rule 14 (10) [2] has not been furnished, the appellants are precluded from raising the question of the insufficiency of the evidence of damages. From an examination of the record on appeal, it appears that all the evidence necessary for a determination of this question has been reproduced.

 At the conclusion of the defendants' evidence, Brown moved for a directed verdict upon the ground that the defendants had "failed to establish fraud or a fiduciary relationship, or even a breach thereof", and that the note and indemnity upon which Brown's claims were based were given for a good and valuable consideration. This motion was denied. The plaintiff did not, with-

in ten days after the verdict, move for a judgment in accordance with his motion for a directed verdict as authorized by Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. It is urged as a further preliminary matter that the filing of such a motion is essential to a review of any issue arising from the failure of the trial court to direct a verdict. The purpose of this rule is to afford to the trial court a "last chance to correct errors." Johnson v. New York, N. H. & H. R. R., 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77; Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849. We think, however, that in the absence of a motion for a judgment n. o. v., the holding of these decisions is that an appellate court may not direct the entry of a judgment, but upon a review of the trial court's denial of a motion for new trial it may remand for a new trial if the evidence is found to be insufficient to sustain the verdict.

 We agree with the trial court that the evidence presented a jury question on the issue of fraud. Generally, fraud consists of some deceitful practice or willful device resorted to for the purpose of inducing another, in reliance upon it, to surrender property or legal rights. 37 C.J.S. Fraud § 1 (1943); 23 Am.Jur. Fraud and Deceit § 2 (1939); Black's Law Dictionary 788, (4th Ed. 1951). It connotes perjury, falsification, concealment and misrepresentation. Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500. Considering the evidence in its entirety, a jury

2. Rule 14(10), 28 U.S.C.A., provides: "If the appellant, under Rule 75(a) of the Federal Rules of Civil Procedure, has designated the entire evidence introduced in the cause to be contained in the record on appeal, then appellant need not designate for reproducing all of such evidence in support of a claim on his part that a certain material and controverted fact was not established by substantial evidence, but may present such claim by filing with the clerk of this court and serving on opposing counsel a statement that no evidence was introduced which would establish such fact, and a certificate by counsel for appellant that such statement is made in good faith. If appellee disagrees with such statement he shall designate for reproducing so much of the evidence as he relies upon to establish such fact, and the clerk shall indicate in the reproduced record the evidence so designated by appellee. Appellant shall have 5 days thereafter to counter designate."

might well have concluded that Brown was in need of cash, and devised a scheme to obtain the proceeds of the $50,000 loan, together with other funds, by overreaching in recommending the investment in First, Inc. There was evidence of gross exaggeration of what could be expected from the earnings of First, Inc. One brother testified that Brown told them that they would double their money within a year. The transaction out of which this litigation arose was recommended to the Alkires by Brown and served as a means to eliminate the necessity of purchasing their stock in First, Inc., and, in addition, required them to assume other obligations for the benefit of Brown. The exchange of the First, Inc. stock, augmented by these new obligations, for the stock of Consolidated Distributors, Inc. and other assets, was an extremely complicated transaction requiring corporate action for the transfer. The obligations were created by the Alkires' approval of the corporate minutes, yet Brown vetoed their suggestion that they have an attorney present. On that occasion the Alkires also endorsed the note in issue here, but they testified that they never understood what it was for. Brown admitted that the amount for which the note was given was not mentioned in the minutes, but he described it as an "arithmetic calculation." Although Brown had a plausible explanation for the execution of this note to him personally, no doubt the jury had difficulty understanding it.

There was evidence that three or four days prior to the transaction, Brown exhibited a statement which he said showed that Consolidated Distributors had earned $10,000 the preceding month, when, in fact, it had not. The value of Consolidated's stock was represented to be $6,000, but a May 31, 1953 balance sheet showed the book value to be $611.58. There was also evidence, which the jury could accept if it saw fit, that at the time of the transaction the machinery inventory of Consolidated was from $8,000 to $8,500 short of what it was represented to be. When the evidence, viewed in the light most favorable to the prevailing party, is such that reasonable persons might reach different conclusions, the question is properly one for the jury. Lohr v. Tittle, 10 Cir., 275 F.2d 662; Atlas Bldg. Prod. Co. v. Diamond Block & Gravel Co., 10 Cir., 269 F.2d 950, certiorari denied 363 U.S. 843, 80 S.Ct. 1608, 4 L.Ed.2d 1727; Commercial Standard Ins. Co. v. Feaster, 10 Cir., 259 F.2d 210.

Apparently at the request of Brown, the court submitted the case to the jury for a general verdict on the theory that since the Alkires had not sought to rescind the contract, their remedy was to have the damages resulting from any fraud on the part of Brown offset against his claim. Of course the Alkires could not, after the discovery of fraud, have the benefit of the contract and also have the consideration that they had paid. Wilson v. New United States Cattle-Ranch Co., 8 Cir., 73 F. 994. Ordinarily, when a vendee ascertains that he has been induced to make a purchase by the fraudulent representations of the vendor he may rescind and recover back the purchase price, together with other damages sustained because of the fraud, or he may affirm and recover the damages suffered, but he cannot do both. Wilson v. New United States Cattle-Ranch Co., supra; Aaberg v. H. A. Harman Co., Colo., 358 P.2d 601; Dumas v. Klatt, 132 Colo. 333, 288 P.2d 642; Dickerson v. Cary, 132 Colo. 144, 285 P.2d 831; Rogers v. Fitzsimmons, 127 Colo. 367, 257 P.2d 420. The ramifications of the transaction here were such that rescission was impossible since, to complete the agreement, the Alkires had obligated themselves to third persons who were not parties to the transaction, and who could look only to them for payment.

It is urged that the jury did not follow the instructions as there was a total lack of proof of any damages. We think the evidence was sufficient to present a jury question. Although strenuously attacked, there was evidence that

the inventory of machinery, as represented at the time of the transfer, was short from $8,000 to $8,500. There was evidence that the book value of Consolidated Distributors' stock was approximately $5,400 less than what it was represented to be. This total is reasonably close to the amount of Brown's claim which the jury did not allow. Damages need not be proved with such preciseness as to permit a jury to reach a verdict with mathematical certainty. An approximation is sufficient if there is substantial evidence which, together with the reasonable inferences to be drawn therefrom, provides a reasonable basis of computation. Vanguard Ins. Co. v. Connett, 10 Cir., 270 F.2d 868; J. T. Majors & Son, Inc. v. Lippert Bros., Inc., 10 Cir., 263 F.2d 650; Stern v. Dunlap Co., 10 Cir., 228 F.2d 939; United States v. Griffith, Gornall & Carman, Inc., 10 Cir., 210 F.2d 11; Mountain States Tel. & Tel. Co. v. Hinchcliffe, 10 Cir., 204 F.2d 381. The jury verdict will be upheld if there is any rational basis for it. Atchison, T. & S. F. Ry. v. Andrews, 10 Cir., 211 F.2d 264.

■ Finally, it is urged that the Alkires waived their right to rely on the defense of fraud. No issue of waiver was presented in the trial court, and it cannot be raised for the first time on appeal. Cf. Atlas Assurance Co. v. Standard Brick & Tile Corp., 7 Cir., 264 F.2d 440; Liberty Petroleum Co. v. California Co., 10 Cir., 114 F.2d 980. See Black Crystal Coal Co. v. Garland Coal & Mining Co., 10 Cir., 267 F.2d 569; Stadia Oil & Uranium Co. v. Wheelis, 10 Cir., 251 F.2d 269; Dubuque Fire and Marine Ins. Co. v. Caylor, 10 Cir., 249 F.2d 162; Justheim Petroleum Co. v. Hammond, 10 Cir., 227 F.2d 629. Furthermore, the record shows that after the discovery of the discrepancies in the inventory Brown was told that the note would not be paid. His claim for the $5,000 did not arise until October of 1958, and since this action was brought in April of 1959 the defense of fraud would still be available as to

that claim. We conclude that the issues, as the parties understood them to be at the time of trial, were fairly submitted to the jury, and the court did not abuse its discretion in denying a new trial.

Affirmed.